**In re James Burnette WOOD and Shannon Maureen Wood, aka Shannon Patten, Debtors.**

**BANK OF HAWAII and Edward J. Stanley, Trustee, Plaintiffs/Appellees,**

v.

**James Burnette WOOD, Defendant,**

and

**Shannon Maureen Wood, aka Shannon Patten, Defendant/Appellant.**

Civ. No. 90–00606 MP.
Bankruptcy No. 83–00361.
BAP No. 90–00606.
Adv. No. 87–0036.

United States District Court,
D. Hawaii.

Feb. 11, 1991.

See also 68 B.R. 613.

Randolph R. Slaton, Honolulu, Hawaii, for debtors.

Gayle J. Lau, Estate Admin'r, Office of the U.S. Trustee, D. Hawaii, Honolulu, Hawaii.

David C. Farmer, Honolulu, Hawaii, for Bank of Hawaii.

Patrick M. Moscatello, Honolulu, for Edward J. Stanley, trustee.

Robert K. Matsumoto, Honolulu, Hawaii, for successor trustee.

ORDER AFFIRMING ORDER DENYING DISCHARGE, AFFIRMING FINDINGS OF FACT AND CONCLUSIONS OF LAW, AND AFFIRMING MEMORANDUM DECISION AND ORDER RE: MOTION FOR RECONSIDERATION

PENCE, Senior District Judge.

I. Introduction

This is an appeal from an order denying discharge entered on December 4, 1989,

together with the accompanying findings of fact and conclusions of law, as well as from the denial of the motion for reconsideration of the same.

## II. *Factual Background*

In July 1983, Appellant Shannon Maureen Wood ("Appellant") and her husband (collectively "Debtors") filed their petition for Chapter 11 relief. A year and a half earlier, in December 1981, the Washington state courts entered an order entitling Appellant to one-fourth of her father's estate (the "Brotman Estate"), but Appellant and her husband failed to include this interest in their schedules. Instead, they listed as an asset a contingent and unliquidated "claim against an heir of the Brotman Estate."

In January 1987, the bankruptcy court converted the Chapter 11 proceeding to Chapter 7. The conversion was affirmed in a decision by the Ninth Circuit Bankruptcy Appellate Panel in September 1989 (the "1989 BAP Decision").

The original meeting under Section 341(a) was scheduled for March 31, 1987. Appellant appeared at that meeting, but it was continued to April 10, 1987. On April 10, Appellant's husband appeared at the meeting and stated that Appellant was ill and would not attend. The meeting was continued until May 1, 1987. At the continued May 1 meeting, Appellant's husband appeared and announced that Appellant refused to appear or to answer any questions. The meeting was then closed.

On May 8, 1987, Appellee Bank of Hawaii ("BOH") filed a complaint objecting to the discharge of the Debtors on the basis of their failure to fully disclose Appellant's interest as an heir of the Brotman Estate. On July 23, 1987, BOH brought a motion for partial summary judgment, seeking a determination that Appellant had an interest in the Brotman Estate, and that such interest was part of the bankruptcy estate.

On September 21, 1987, the bankruptcy court orally granted the motion for partial summary judgment, and on October 13, 1987, entered its Findings of Fact, Conclu-

sions of Law and Order Granting Motion for Partial Summary Judgment.

On October 26, 1987, substitute counsel for the Debtors wrote to the Trustee, requesting a reopening of the meeting of creditors. No motion to reopen was ever filed, and the meeting was never reopened.

On December 4, 1989, after requesting briefing on the court's power to order a reopening of the creditors' meeting, the bankruptcy court entered its Findings of Fact and Conclusions of Law Re: Bank of Hawaii's Motion for Summary Judgment, Debtor's Motion for Partial Summary Judgment ("December 4 Findings and Conclusions"). In that decision, the court refused to reopen the meeting or discharge Appellant:

> [T]his Court has power to re-open the Section 341(a) meeting of creditors for certain limited purposes. However, in the instant case, the Court finds no valid reason to re-open the 341 meeting of creditors. Mrs. Wood only desires to testify now, to arrange a defense to the Complaint against her....
>
> ... It was only after a complaint was filed that Mrs. Wood decided to testify, in an attempt to avoid denial of discharge under 727(a)(6)(c).
>
> To reopen the 341 meeting after the Bank's Complaint has been filed to allow Mrs. Wood an opportunity to testify will mean that § 727(a)(6)(c) will have no effect at all. It means that defendants will decline to appear at 341 meetings and will refuse to testify, hoping that no one files a complaint by the deadline set for filing of complaints. Only after a complaint is filed, these debtors will be willing to testify. This Court will not use its § 105 power to permit such gamesmanship!

December 4 Findings and Conclusions at 4–5 (citation omitted). Concurrently with the December 4 Findings and Conclusions bankruptcy court entered its Order Denying Discharge of Shannon Maureen Wood ("Order Denying Discharge").

On December 13, 1989, Appellant filed a motion for reconsideration, arguing (1) that her nonappearance at meetings was based

on the advice of counsel, (2) that she had promptly requested reopening of the meeting of creditors, and (3) that no one was prejudiced by her nonappearance. The motion for reconsideration was denied on January 31, 1990.

Appellant appealed the Order Denying Discharge, the accompanying December 4 Findings and Conclusions, and the Order Re: Motion for Reconsideration. Successor Trustee of the estate, Robert K. Matsumoto, also named as Appellee, has joined in BOH's brief (the Successor Trustee and BOH are referred to collectively at "Appellees").

The only facts in dispute relate to the state of mind of Appellant. Appellees contend that she had an intent to defraud creditors by concealing the true nature of her Brotman Estate interest. Appellant contends that she was acting in good faith, relying on the advice of counsel in refusing to appear or answer questions.

### III. *Standard of Review*

■ The bankruptcy court's findings of fact are to be reviewed on a "clearly erroneous" standard; conclusions of law are reviewed *de novo.* *See Anderson v. Bessemer City,* 470 U.S. 564, 572, 105 S.Ct. 1504, 1510, 84 L.Ed.2d 518 (1985); *In re Rossi,* 86 B.R. 220, 222 (9th Cir. BAP 1988).

### IV. *Issues on Appeal*

On appeal, Appellant raises essentially the same points on which she based her motion for reconsideration. She argues that denial of discharge, notwithstanding the statutory language supporting it, was unduly harsh and unwarranted. She calls attention to two allegedly mitigating circumstances: her alleged reliance on the advice of counsel, and the absence of prejudice to creditors. She also argues that the bankruptcy court erred in failing to reopen the creditors' meeting. Finally, she contends that the bankruptcy court improperly denied for reconsideration.

### A. Denial of Discharge

This issue is a simple and discrete one: whether to apply the clear language of the statute as written. The relevant statute provides:

> The court shall grant the debtor a discharge, unless—
>
> \* \* \* \* \* \*
>
> (6) the debtor has refused, in the case—
>
> \* \* \* \* \* \*
>
> (C) on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify;

11 U.S.C. § 727(a)(6)(C). Here, it is undisputed that Appellant refused to testify. Appellant did not, nor does she now, claim a privilege against self-incrimination. Under its clear language, there is no question that the statute is applicable on the admitted facts of this case.

Given the inflexibility and clarity of the statute, Appellant must resort to arguing the equities. She attempts to establish that (1) because she was acting on the advice of counsel, and (2) because no one was prejudiced by her refusal to testify, the sanction dictated by the statute is too severe.

Her quibble is with Congress, not with the bankruptcy court. Congress provided that refusal to testify is sufficient to deny a debtor the privilege of discharge. The bankruptcy court dutifully carried out that mandate. Neither of Appellant's purported mitigating circumstances can justify a different result without flouting the plain language of the statute and eviscerating its purpose of the statute.

#### 1. *Acting on the Advice of Counsel*

■ The 1989 BAP Decision issued in this case when it was converted from Chapter 11 to Chapter 7 has spoken to the issue of Appellant's purported reliance on counsel:

> It is generally recognized that a party may not avoid dismissal or conversion by arguing that the party is suffering from the errors of counsel. Errors of counsel are generally imputed to, and their con-

sequences visited upon, the client. Erroneous advice from counsel thus be [sic] insufficient to gain release unless the errors of counsel will amount to gross neglect and the client has otherwise been diligent despite such lapses. The Woods have not shown gross neglect and therefore cannot escape the conversion of their case through attributing blame to their counsel.

BAP No. HI–87–1155–MeAsMo at 7–8 (citations omitted). The record does not contain evidence to support a finding of such gross neglect at this stage either.

To the extent that Appellant bases this argument on her own good faith, the argument lacks foundation. Her state of mind is an issue of fact, and the bankruptcy court's findings on such issues are binding on this court unless clearly erroneous:

> Mrs. Wood only desires to testify now, to arrange a defense to the Complaint against her and her husband.... It was only after a complaint was filed that Mrs. Wood decided to testify, in an attempt to avoid denial of discharge under 727(a)(6)(c).... This Court will not use its § 105 power to permit such gamesmanship!

December 4 Findings and Conclusions at 4–5. There is sufficient evidence in the record to support a finding that Appellant's motives were grounded in "gamesmanship" rather than candor. There being no clear error, this court will not disturb those findings.

### 2. *Absence of Prejudice to Creditors*

█ Appellant argues that there was no prejudice to creditors occasioned by her refusal to testify, and that this militates against her being denied discharge. This argument also lacks merit.

Initially, it must be noted that the language of the statute applicable here is not limited to those refusals to testify that prejudice creditors. The statute applies to any "material question." In this case, Appellant refused to appear at all, and there-

by effectively "refused" to answer *any* question, regardless of its materiality.

Moreover, the essence of Plaintiff's argument was argued, considered, and specifically rejected in *In re Chalik*, 748 F.2d 616 (11th Cir.1984). That case involved a debtor who failed to list certain securities on his bankruptcy schedules. The court found the omission to constitute a "false oath" under 11 U.S.C. § 727(a)(4) and denied discharge. Like Appellant in this case, the debtor appealed, arguing that the omission did not prejudice creditors; he argued that the omitted information would not have revealed assets available to the creditors. The court did a thorough survey of case law in the area, and unequivocally concluded that

> detriment to the creditor need not be shown in order to bar discharge for making a false oath. The subject matter of a false oath is "material," and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.... It makes no difference that he does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them.

*Id.* at 618 (citations and footnote omitted).

This is the law in the Ninth Circuit as well. *See United States v. O'Donnell*, 539 F.2d 1233, 1237–38 (9th Cir.), *cert. denied*, 429 U.S. 960, 97 S.Ct. 386, 50 L.Ed.2d 328 (1976) ("Materiality does not require a showing that creditors are harmed by the false statements."); *Duggins v. Heffron*, 128 F.2d 546, 549 (9th Cir.1942). Although *In re Chalik* speaks in terms of "false oath," it is clear that it deals only with the omission of facts. The analogy to a refusal to testify is direct. Both involve failing to proffer material facts when specifically called upon to do so.

Therefore, even if the bankruptcy court had found a lack of prejudice to creditors (which it did not), denial of discharge would

still have been justified under the terms of the statute. In actuality, however, it appears that Appellant's refusal to testify did result in prejudice to creditors by causing delay and the consequent further dissipation of assets of the estate.[1] Thus, if necessary, such prejudice could have been found.

### B. The Refusal to Reopen the Creditors' Meeting

■ Appellant ascribes error to the bankruptcy court's refusal to reopen the creditors' meeting on her request. It appears to this court, however, as it did to the bankruptcy court, that Appellant's sole purpose for seeking such reopener was to avoid the denial of discharge. She apparently stonewalled on the Brotman Estate in a futile attempt to keep it out of the bankruptcy.

Once the court ruled against her on that issue, she had no reason to hold back any longer, and "promptly" sought reopening of the creditors' meeting. Thus it was not until she had nothing more to gain and everything to lose by continuing to withhold her testimony, that she voluntarily came forward professing candor and good faith. The bankruptcy court properly foiled the gambit.

■ Although the bankruptcy court has the power, under § 105, to reopen a creditors' meeting, such power should be exercised only in compelling circumstances. *See Matter of Mission Carpet Mills, Inc.,* 10 B.R. 494 (9th Cir. BAP 1981). Here Appellant sought to reopen the meeting in an effort to avoid the consequences of her failure to cooperate in the bankruptcy. She "has not alleged any circumstances *necessitating* such an *unusual* action by the court." *Matter of Boucher,* 728 F.2d 1152, 1155 (8th Cir.1984) (emphasis added).

### C. The Motion for Reconsideration

As this court observed in *In re Greco,* 113 B.R. 658, 664 (D.Haw.1990), a motion for reconsideration must be based on one of three factors: (1) an intervening change in controlling law, (2) the availability of new evidence that could not have been discovered previously, or (3) the need to correct clear error or prevent manifest injustice. As neither of the first two factors is even arguably present, Appellant was forced to rely on the third factor, "clear error" or "manifest injustice."

■ Because, as noted above, the bankruptcy court's holding was in accordance with the controlling statute, and proper as a matter of law, there is neither error nor injustice, much less *"clear* error" or *"manifest* injustice," to prompt reconsideration. The motion for reconsideration was, therefore, properly denied.

## V. *Conclusion*

For the reasons stated, the bankruptcy court's Order Denying Discharge entered December 4, 1989, its Findings of Fact and Conclusions of Law entered December 4, 1989, and its Memorandum Decision and Order Re: Motion for Reconsideration entered January 31, 1990 are AFFIRMED.

IT IS SO ORDERED.

---

1. Appellees cite evidence in the record that Appellant and her husband were less than conscientious in containing their personal expenses during this bankruptcy proceeding. These personal expenses totalled over $100,000, not including some $30,000 in travel expense alone. Although not necessary to support the decision of the court, it may be presumed that *any* unjustified delay or obstruction—such as Appellant's refusal to testify—will prejudice creditors when expenses are accumulating at such a rate.