**In re Susan WHITEHEAD, Debtor.**

**Thomas S. Heidkamp, Trustee, Plaintiff,**

v.

**Susan Whitehead, Defendant,**

**Edgar County Bank & Trust Co., Plaintiff,**

v.

**Susan Whitehead, Defendant.**

**Bankruptcy No. 01–2024–9P7.**

**Adversary Nos. 01–282, 01–283.**

United States Bankruptcy Court, M.D. Florida, Ft. Myers Division.

March 29, 2002.

Marshall D. Cohen, Fort Myers, FL, for debtor.

Thomas S. Heidkamp, Fort Myers, FL, trustee.

Andrew D. Thomas, Evansville, IN, Special Counsel for Trustee.

Robert E. Bone, Jr., Cape Coral, FL, for Edgar County Bank and Trust Company.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Bankruptcy Judge.

IN THIS Chapter 7 liquidation case the matters under consideration are two challenges to the right of the debtor, Susan Whitehead (Debtor) to gain the benefit of the general bankruptcy discharge. One challenge is by Thomas S. Heidkamp, the duly appointed Chapter 7 Trustee (Trustee), who initiated Adversary Proceeding No. 01–282, and the other is by Edgar County Bank & Trust Company (Bank), who initiated Adversary Proceeding No. 01–283.

The Trustee, in his Complaint, consists of three separate claims. The claim in Count I is based on the allegation that the Debtor did, with intent to hinder, delay or defraud creditors, transferred within one year before the commencement of the case her interest in personal property, to wit: (i) furnishings and household goods located in Florida and Indiana; (ii) her interest in real property to her mother; (iii) her interest in personal property to her children; and (iv) "other property which may be discovered during discovery." (sic) Based on the foregoing, the Trustee relies on 11 U.S.C. § 727(a)(2)(A) and seeks a denial of the Debtor's discharge.

In Count II of the Complaint, the Trustee contends that the Debtor made a false oath in connection with her case by failing to: (i) disclose her interest in furnishings and household goods located both in Florida and Indiana; (ii) disclose transfer or sale of substantial amounts of personal property in her answer to Question 10 on the Statement of Financial Affairs; (iii) failed disclose the transfer of her interest in real property to her mother in answer to Question 10 on the Statement of Financial Affairs; and (iv) "other actions which constitute false oath which may be obtained through discovery" (sic). Thus, according to the Trustee, the Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

In Count III, the Trustee contends that the Debtor failed to explain satisfactory the loss of assets. In particular, the Debtor failed to account for the disposition of the insurance proceeds she received of $1.7 million when she lost her husband and, therefore, the Debtor is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(5).

The Complaint filed by the Bank contains no separate counts. The Bank's claim is based on the allegation that the Debtor "did not have a life style or expenses from the date that she received the insurance proceeds until the filing of the bankruptcy that would deplete the insurance proceeds that she received." In addition, the Bank contends that the Debtor, "with intent to delay or defraud creditors, transferred, removed and concealed or destroyed and forbade (sic) to be removed and concealed or destroyed certain property in her possession including, the life insurance proceeds on the life of the Debtor's husband, and other items of personal property." In addition, the Bank contends that the insurance proceeds and personal property items were fraudulently omitted from her Schedule of assets and the Debtor failed to reveal to the Trustee the existence of same. Based on the foregoing, the Bank contends that by omitting these assets, the Debtor committed false oath in connection with her case.

In the wherefore clause of the Bank's Complaint, oddly enough, seeks an order

from this Court ordering the Debtor "to amend and supplement her schedules so as to show the property of her estate and the property that has been transferred within one year immediately preceding the filing of the bankruptcy and that if said supplement and amended petition be not received and filed in this honorable court within the next twenty days or reason given for failure to comply at the hearing had on the day and date set by this honorable court, then Plaintiff prays that no discharge be granted to said debtor."

"Plaintiff further prays that debtor be denied a discharge for the several reasons alleged in the above and foregoing petition and especially that the Plaintiff's claim be declared to be a non-dischargeable debt by this honorable court; further prays that the day and date be set for hearing on this objection to discharge and for such other relief as the court deems proper." (sic)

In due course, the Debtor filed her Answer to both Complaints, in each setting forth some admissions and denials of all the material allegations set forth in the Complaints. In due course, The matter was set down for final evidentiary hearing and since the evidence presented is germane and relevant to the claims asserted in both Complaints, the challenges will not be considered separately. The facts relevant as established at the final evidentiary hearing are as follows:

The Debtor, who was a resident of Indiana, is a widow, having lost her husband in 1995 as a result of a homicide. Until she moved to Florida in October 2000, she lived in Indiana and maintained a residence in Sullivan, Indiana. The home was a 15,000 square feet four-level residence fully furnished. Her late husband was the owner of a new car dealership and when he died the Debtor received a settlement on his life insurance policy of $1.7 million. The monthly mortgage payments on the home in Indiana were $5,000 and the annual property taxes were $14,000. The estate of her late husband is still in probate and the probate is not closed. It is without dispute that the Debtor received an additional $40,000 after the commencement of this Bankruptcy Case in August of 2001.

In September 2000, she visited Florida and signed a contract to purchase a home located at 4315 S.W. 19th Place, Cape Coral, Florida. The sale was actually closed in October and she moved into that house, which she claims to be her current residence. *See* Trustee's Exhs. 40, 5, & 17. She stopped making the mortgage payments on the Indiana residence and in her visits back to Indiana in November for Thanksgiving and December for her daughter's graduation, she stayed in the house. It appears, however, that the house has been deeded back to the Bank in lieu of a foreclosure, and she no longer has an interest in the house located in Sullivan, Indiana.

On February 9, 2001, she filed her Voluntary Petition for relief in this Court under Chapter 7 of the Bankruptcy Code. The Petition was accompanied by the requisite documents. On Schedule B, the Debtor failed to list assets; failed to list her interest in the husband's probate estate; failed to schedule her interest in a commercial lease involving the business property that was leased to the current operator of the dealership who ultimately purchased the property from the mortgagee.

On the Statement of Financial Affairs, she (i) failed to disclose a garage sale of certain furnishings located in Indiana, (ii) failed to disclose the transfer of a pool table and weight room equipment to her children; (iii) failed to disclose a fax machine, rolltop desk and chair, two gun cabinets, four chairs, a television set, two ice

machines; (iv) failed to disclose her interest in real estate to her mother; (v) failed to disclose personal property sold to Swank's (Trustee's Exh. No. 2); (vi) failed to disclose the sale of a Kawasaki Mule sold to her brother-in-law; and (vii) failed to disclose the sale of a Steinway piano sold back to the dealer and a Yamaha piano. She also failed to disclose the disposition of a Craftsman tool kit. The Bank did not put on any evidence in support of its challenge but relies on the evidence presented by the Trustee in support of its Objection.

The legislative history of both pre-Code and Code provisions leaves no doubt that certain general principles established by case law govern the rights of a debtor to obtain the benefit of the general bankruptcy discharge. It is well established that the provisions of the discharge were designed by Congress for the purpose of assisting financially distressed debtors to receive a fresh start in life unencumbered from the financial vicissitudes of the debtor's past. *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1979). Thus, these provisions of the Bankruptcy Code should be construed in favor of the debtor and strictly against the one who challenges the debtor's right to the discharge. *In re Muscatell,* 113 B.R. 72 (Bankr.M.D.Fla.1990); *In re Love,* 577 F.2d 344 (5th Cir.1978). It is equally true, however, that the privilege of discharge is reserved to honest debtors and debtors who come to the Court seeking relief under Chapter 7 of the Code have an unconditional, absolute obligation to make full disclosure of all matters relevant to the administration of the estate. *Kentile Floors, Inc. v. Winham,* 440 F.2d 1128 (9th Cir.1971); *In re Matter of Garman,* 643 F.2d 1252 (7th Cir.1980). Policy considerations mandate that the requirement to list all assets and liabilities is an absolute obli-

gation of those seeking discharge of their debts. Any other result would put the debtor in the position of deciding which assets are worthy of disclosure and which are not. Creditors are entitled to judge for themselves which assets will and will not benefit the estate. It is not for the debtor to decide what is and is not relevant nor is it the debtor's decision to determine what properties are worth disclosing and what are not. The fact that the debtor ultimately will claim a property as exempt does not relieve the debtor of the obligation to disclose such an asset. *In re Murray,* 249 B.R. 223 (E.D.N.Y.2000). The veracity of the debtor's Statement is absolutely essential to the successful administration of the Bankruptcy Code. *Diorio v. Kreisler–Borg Construction Co.,* 407 F.2d 1330 (2nd Cir.1969); *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616 (11th Cir.1984). While isolated instances of omissions could be attributable to oversight or even negligence may be excusable, a pattern of omissions of several important information clearly warrants to conclude that the omissions and the failure to furnish appropriate answers to the questions on the Statement of Financial Affairs was done intentionally and with the requisite fraudulent intent to conclude the debtor did in fact make a false oath in connection with the case. *In re Hoflund,* 163 B.R. 879 (Bankr.N.D.Fla.1993).

It logically follows from the foregoing that a debtor who fails to make a full and complete disclosure of relevant information places the right to the discharge in serious jeopardy. The questionnaire set forth in the Statement of Financial Affairs is obviously of extreme importance. For instance, a failure to disclose transfers is not an acceptable defense based on the contention that they understood the term "transfer" does not include sales. It is clearly the responsibility of counsel repre-

senting debtors to fully explain to debtors the scope and reach of the term "transfer" as defined in the Code by Section 101(54).

 Whether or not a debtor now makes a full disclosure or even did at the meeting of creditors and furnished the missing information concerning the nature and location of the omitted assets and furnished after being questioned, the information sought which was not furnished on the Statement of Financial Affairs, is of no significance and would not cleanse the original omission if they were made knowingly and fraudulently. However, the debtor may not hide behind the "invisible cloak" of disclosure by alleging that although the required information was not listed on the appropriate schedules, the omitted assets were revealed to the trustee at the 341 meeting of creditors. A subsequent disclosure would not absolve the debtor from the original false statements made under penalty of perjury. This defense has been generally rejected by the court. *In re Arcuri*, 116 B.R. 873 (Bankr.S.D.N.Y.1990), *abrogated by Grogan, infra* (as to burden of proof); *In re Muscatell, supra; In re Kestell*, 99 F.3d 146 (4th Cir.1996); *In re Shebel*, 54 B.R. 199 (Bankr.D.Vt.1985). *Compare, In re Brown*, 108 F.3d 1290 (10th Cir.1997)(denial of discharge not warranted when debtor himself raised omission of automobile at creditors meeting); *In re Kelly*, 135 B.R. 459 (Bankr.S.D.N.Y.1992)(denial of discharge not warranted when debtor took necessary steps of retaining new counsel and amending schedules when he realized reliance on his counsel was misplaced).

 Considering the claim of fraudulent transfer pursuant to 11 U.S.C. § 727(a)(2)(A), it should be pointed out at the outset that it is now well established that the burden of proof is no longer clear and convincing evidence but the mere preponderance of evidence. In the case of *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991), the Supreme Court held:

> Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless "particularly important individual interests or rights are at stake." We have previously held that a debtor has no constitutional or "fundamental" right to a discharge in bankruptcy...
>
> We are unpersuaded by the argument that the clear-and-convincing standard is required to effectuate the "fresh start" policy of the Bankruptcy Code ... [T]he Act limits the opportunity for a completely unencumbered new beginning to the "honest but unfortunate debtor."

F.R.B.P. 4005 provides that at the trial on a complaint objecting to discharge, the plaintiff has the burden of proving the objection. In order to establish a viable claim under Section 727(a)(2)(A), the Trustee has the burden to establish (1) the transfer within one year preceding the commencement of the case with *intent* to hinder, delay or defraud creditors. The intent of the debtor, of course, can seldom be established by direct evidence but extrinsic evidence may warrant the finding that the debtor did in fact act with intent when the transfers in question were accomplished. The hallmark of fraudulent intent has been considered by numerous courts and it is generally agreed that they are the following: (1) lack of adequate consideration for the transfer; (2) relationship between the parties; (3) retention of benefit of the property in question by the debtor even though property has ostensibly been transferred, this is the so-called "sham" transfer; (4) the existence of cumulative effect or pattern or series of

transactions and the course of conduct incurring debt; and, most importantly (5) pendency or threat of suit by creditors. *In re Gollomp*, 198 B.R. 433 (S.D.N.Y. 1996).

■ This record is replete with numerous transfers by the Debtor during the relevant period. These transfers were basically not to relatives but either garage sales or sales through an independent auctioneer. While no doubt the funds obtained did not, in all instances, represent the fair market value of the items, this is, of course, clearly understandable and should be familiar to everyone who knows what prices one can obtain through garage sales. Even when items were sold, such as the Kawasaki Mule to the Debtor's brother-in-law and sister-in-law, the Debtor received sufficient consideration for the transfer. However, it is true that the Debtor was involved in litigation in Indiana where she was sued by United Leasing Company (United Leasing), who sought judgment against the Debtor of her guarantee of a corporation obligation in the amount of $3,000,000. At the time this Bankruptcy Case was initiated, this suit was still pending. However, other than filing a suit, there is no indication that United Leasing attempted to do anything to collect on this obligation.

This record is devoid of any evidence to warrant the finding that any other creditors filed an action against her. Likewise, her biggest obligation was the mortgage on the residence, which was abandoned by her and ultimately sold at foreclosure. There were no direct or indirect collection efforts by any of her creditors which in turn would justify the finding that she acted with actual intent. The most that could be said is that the evidence presented, viewed most charitably in favor of the Trustee, might be considered to be in equal balance. This is insufficient under

*Grogan* to carry the time of day and, therefore, the claim set forth in Count I cannot be sustained based on 11 U.S.C. § 727(a)(2)(A).

■ However, the claim of the Trustee set forth in Count II based on false oath, 11 U.S.C. § 727(a)(4), in connection with her case requires a totally different outcome. As noted earlier, this record is replete with evidence of several significant omissions of assets and untrue answers in the Statement of Financial Affairs. The Debtor failed to disclose her interest in her husband's estate which was still in probate from which she actually received $40,000 after the commencement of the case; she failed to schedule her interest in a leasehold involving the business property where the dealership was located from which the tenant actually paid some rent to the Trustee.

In response to Question 10 in the Statement of Financial Affairs, which asks the following question:

> List all other property, other than property transferred in the ordinary course of the business of financial affairs of the debtor, transferred either absolutely or as security within one year immediately preceding the commencement of this case,

the Debtor failed to disclose the transfers described earlier of some very substantial assets such as a Steinway grand piano, her husband's gun collection valued at least $14,000, and the disposition of household goods through Swank's Auction House. The Debtor failed to furnish any satisfactory explanation for the omission of the assets described on her Schedules.

Based on the foregoing, this Court is satisfied that there is more than ample evidence in this record to sustain the Trustee's claim based on Section 727(a)(4) that the Debtor willfully and knowingly

committed false oath in connection with her case.

At the conclusion of the evidence, the Trustee indicated that the claim set forth in Count III, the Debtor's alleged failure to explain satisfactory loss of assets, pursuant to 11 U.S.C. § 727(a)(5), would not be pursued and, therefore, this claim should be dismissed with prejudice.

Turning to the claims asserted by the Bank, this Court is satisfied that the Trustee's proof equally supports a denial of the Debtor's right to a discharge even though the claim was not very well articulated as set forth in the Complaint and would have been subject to dismissal for improper pleading. However, the Bank not only sought a denial of the discharge but an order directing the Debtor to file an amended "petition" and supply the missing information and in the event the Debtor failed to do so, a denial of her discharge. The relief sought is clearly not appropriate nor is the request by the Bank to declare the debt owed to the Bank by the Debtor excepted from the discharge. There is absolutely nothing presented at the trial which would warrant the finding that the debt owed to the Bank is under any of the exceptions to discharge set forth in Section 523(a) of the Bankruptcy Code.

A separate final judgment will be entered in accordance with the foregoing.