In re William **HALISHAK**, Debtor.

United States Trustee, Plaintiff,

v.

William Halishak, Defendant.

No. 04–3049.

United States Bankruptcy Court, N.D. Ohio.

Sept. 29, 2005.

---

See also 324 B.R. 641.

Maria D. Giannirakis, Office of the U.S. Trustee, Cleveland, OH, for plaintiff.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the separate complaints brought by the United States Trustee to Deny the Discharge of William Halishak (Case No. 04–3049) and Deborah Halishak (Case No. 04–3256), husband and wife. By way of separate petitions, each of the Debtors has sought relief under Chapter 7 of the United States Bankruptcy Code. As the issues and relevant evidence applicable to each adversary proceeding were closely intertwined and related to the other, the Court, for reasons of both judicial economy and equity, tried the matters together; and for these same reasons, the Court will discuss the merits of each case together herein, making due allowance for those particular areas where a divergence in the factual circumstances of each individual Defendant merits a separate discussion.

## OVERVIEW AND BACKGROUND

The aim of a Chapter 7 debtor is to receive the protections afforded by the bankruptcy discharge, 11 U.S.C. § 524. Section 727(a) governs the entry of the order for discharge, setting forth the general rule that a debtor is entitled to receive one. However, in exchange for receiving the benefits of a bankruptcy discharge, debtors are expected to fully, honestly and unconditionally cooperate with the bankruptcy process.

To ensure such compliance, § 727(a) sets forth a number of grounds upon which a debtor may be denied a discharge. And as a debtor's compliance with their duties is absolutely necessary to protect the integrity of the bankruptcy

process, the effect of having a discharge denied is harsh: it renders all the debts/claims which could have been included in the petition forever nondischargeable in bankruptcy, thereby subjecting the debtor's assets and future income to all claims of such creditors. 11 U.S.C. § 523(a)(10).

In this particular matter, the United States Trustee (hereinafter "UST") cites to five provisions of § 727 in support of its action to have both of the Defendants' discharges denied: (1) for making a false oath or account, (a)(4)(A); (2) attempting to defraud the estate, (a)(2); (3) failing to keep adequate records, (a)(3); (4) not adequately explaining a disposition of estate assets, (a)(5); and (5) failing to obey a lawful court order, (a)(6). Of these grounds, the UST concentrated its efforts on—and likewise this Court's analysis will be confined to—the exception to discharge set forth in paragraph (a)(4)(A). This section provides:

> (a) The court shall grant the debtor a discharge, unless—
>
> > (4) the debtor knowingly and fraudulently, in or in connection with the case—
> >
> > > (A) made a false oath or account[.]

■ As used in subparagraph (A), a statement made under "oath" includes a verification as to the veracity of the information contained in a debtor's petition, inclusive of the schedules and the statement of financial affairs. *Perry v. Warner (In re Warner)*, 247 B.R. 24, 27 (1st Cir. BAP 2000). And to this end, the UST relies on a number of inaccuracies contained in both of the Defendants' respective bankruptcy petitions for its position that their discharge should be denied under this provision.

On the position taken by the UST, it is primarily the meaning, as opposed to the existence, of the following facts and circumstances which are at issue:

The Defendant, William Halishak, filed a bankruptcy petition under Chapter 7 of the United States Bankruptcy Code in September of 2003. Later, in the middle of 2004, the Defendant, Deborah Halishak, also filed a bankruptcy petition under the same Chapter. In the respective petitions, the Defendants listed as their major asset their marital residence, estimating its value at $1,250,000.00, with a mortgage of approximately $500,000.00. The two Defendants, with respect to both their individual bankruptcy case and this adversary proceeding, have never been represented by legal counsel.

In his bankruptcy petition, Mr. Halishak failed to properly list his home address, instead providing as an address the location where he had previously worked as a consultant. No amendment has ever been filed to his bankruptcy petition correcting this error. Mrs. Halishak assisted Mr. Halishak in completing his bankruptcy petition.

In his pending bankruptcy, Mr. Halishak has on three separate occasions failed to appear for scheduled examinations, two involving the § 341 meeting of creditors and one involving an examination under Bankruptcy Rule 2004.

Both of the Defendants have previously filed for bankruptcy relief: Mr. Halishak in the year 2001 in California under Chapter 7 of the Code; Mrs. Halishak in this district, in the year 1999, under Chapter 13 of the Code. In his pending bankruptcy, Mr. Halishak did not disclose the existence of his prior case. Neither of their prior cases proceeded to discharge, with Mr. Halishak's case being dismissed in the same year for failing to appear at two § 341 examinations. Mrs. Halishak's case was dismissed the

year following its commencement based upon a lack of funding.

At the time of the filing of their respective bankruptcies, foreclosure actions were pending against each of the Defendants, with the foreclosure actions having been consolidated prior to bankruptcy. The subject of these foreclosure actions was the Defendants' marital residence. Here, Mrs. Halishak iterated that a major focus of both their respective bankruptcy filings was aimed at retaining this property.

Mr. Halishak, although setting forth in his schedule of expenditures (schedule J) an expense of $4,652.00 for housing, did not identify in his bankruptcy petition the existence of the foreclosure action; similarly, Mrs. Halishak failed to properly identify the pendency of the foreclosure action in her petition. In his petition, Mr. Halishak identified his interest in the property (Schedule D) as "wife's residence," having transferred title to the property to his wife in 1999, but with his liability on the mortgage continuing.

Although not titled in either of their name, the Defendants have had the use, from family members and a former business associate, of certain bank accounts and a car. The Defendants' use of this property, however, was not disclosed in either of their respective bankruptcy petitions.

In February of 2004, the UST filed its action against Mr. Halishak to deny discharge. In August of 2004, its action to deny discharge was commenced against Mrs. Halishak.

### LEGAL DISCUSSION

■ In *Keeney v. Smith (In re Keeney)*, the Sixth Circuit Court of Appeals held that an action brought under § 727(a)(4)(A) consists of five elements:

(1) the debtor made a statement under oath;

(2) the statement was false;

(3) the debtor knew the statement was false;

(4) the debtor made the statement with fraudulent intent; and

(5) the statement related materially to the bankruptcy case.

227 F.3d 679, 685 (6th Cir.2000). For each of these elements, the overall burden of persuasion rests entirely upon the moving party, here the UST, to establish the element's applicability by at least a preponderance of the evidence. BANKR.R.PROC. 4005; *Barclays/American Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir.1994). However, the burden of production—that which requires making a *prima facie* showing—does not remain so firmly placed. Instead, the moving party is charged with the initial burden of putting forth evidence that all of the elements of § 727(a)(4) have been met; but once shown, the burden of production will shift to the debtor to provide a credible explanation for their actions. *Cleveland v. Bluestone (In re Bluestone)*, 102 B.R. 103, 106 (Bankr.N.D.Ohio 1989).

■ On the individual elements of § 727(a)(4)(A), three do not merit any in-depth discussion. First, it can be safely stated that, in conformance with the first two elements of the § 727(a)(4)(A) test, the Defendants made false statements under oath, with each of the Defendants' bankruptcy petitions admittedly containing a number of inaccuracies. Nor can it realistically be said that such inaccuracies were not material under the last element of the § 727(a)(4)(A) test, with the Sixth Circuit defining materiality broadly as anything "bear[ing] a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition

of his property." *In re Keeney*, 227 F.3d at 686.

Thus, as is typical in many actions brought under § 727(a)(4), only the elements involving the defendant's state of mind—knowledge and intent—are in controversy. In *In re Keeney*, the Sixth Circuit discussed in some detail the contours of these elements, explaining:

> ... intent to defraud involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression. A reckless disregard as to whether a representation is true will also satisfy the intent requirement. Courts may deduce fraudulent intent from all the facts and circumstances of a case. However, a debtor is entitled to discharge if false information is the result of mistake or inadvertence.

227 F.3d at 685–86.

As this explanation shows, the type of fraud contemplated under § 727(a)(4) is that of actual fraud,—as opposed to constructive fraud or fraud imposed by law—which looks to a defendant's subjective state of mind at the time of the transaction in question. *Hunter v. Benson (In re Benson)*, 64 B.R. 76, 78 (Bankr.N.D.Ohio 1986). To this end, actions will generally speak louder than words, with admissions being rare and denials the norm. Thus, the use of circumstantial evidence, as opposed to direct evidence, is normally a must. *See, e.g., Structured Asset Servs. L.L.C. v. Self (In re Self)*, 325 B.R. 224, 247 (Bankr.N.D.Ill. 2005).

In using circumstantial evidence, there will often exist numerous evidentiary indicators, each of which alone would not establish fraud, but when viewed collectively form a trail leading firmly in the direction of fraudulent intent. As such, an always important consideration in any analysis under § 727(a)(4)(A) is whether there exists a series or pattern of errors and omissions. *Overly v. Guthrie (In re Guthrie)*, 265 B.R. 253, 263 (Bankr. M.D.Ala.2001). What's more, when put into practice in this case, a long string of deficiencies becomes impossible to ignore. And although each alone is not critical, when viewed in the aggregate, they weave a pattern of conduct that, as set forth below, becomes impossible to ascribe to just inadvertence and/or mistake, at least in the absence of the Defendants providing a credible explanation.

As outlined above, Mr. Halishak failed to properly list his address; failed to disclose the existence of a prior bankruptcy case commenced just a couple of years earlier; and failed to disclose his beneficial interest in a car utilized for his personal use. And together, Mr. and Mrs. Halishak failed to properly disclose the existence of a foreclosure action pending against their marital residence; and both failed to set forth their beneficial interest in certain bank accounts which were titled in the names of various members of their immediate family.

Additionally, besides the obvious deficiencies just set forth, other more subtle, but collectively just as significant deficiencies in the Defendants' bankruptcy petitions were also brought to the Court's attention at the Trial. First, Mr. and Mrs. Halishak admitted that their income and expense figures were not entirely accurate. For example, they set forth in their schedules a monthly mortgage payment, despite the fact that it was not being paid. Other expenses were also apparently inflated. Moreover, Mr. Halishak also listed expenses for an automobile, but, as just noted, no interest in an automobile was disclosed in his petition. Fi-

nally, these matters were also brought to this Court's attention at the Trial: (1) one and one-half years prior to his current bankruptcy, Mr. Halishak sold a condominium; (2) Mr. Halishak had recently purchased the furniture in the Defendants' martial home; and (3) Mr. Halishak was the owner of an insurance policy.

The above errors and omissions, while all pertaining directly to the Defendants' bankruptcy petitions, also do not exist in a vacuum. A determination of fraudulent intent under § 727(a)(4) often requires that external events be examined to give the errors and omissions context. *Palmer v. Downey (In re Downey)*, 242 B.R. 5, 13–14 (Bankr.D.Idaho 1999). And when viewed in this light, an even deeper pattern of uncooperativeness with the bankruptcy process emerges.

■■■■ Conspicuous and unignorable here, Mr. and Mrs. Halishak recently had their prior bankruptcy cases dismissed—not as the direct result of their financial hardships, but rather (and especially with Mr. Halishak) simply as the result of their inactions: Mr. Halishak for twice failing to attend the first meeting of creditors; and Mrs. Halishak for not adequately funding her plan for repayment. Furthermore, as it pertains to Mr. Halishak, this concern becomes especially acute because again, in his current bankruptcy case, he has twice failed to appear for his first meeting of creditors, along with failing to appear at a court ordered examination. And as an aside, this conduct, alone, could serve as a viable basis to deny discharge under § 727(a)(6)(A)/(C). *See Bank of Hawaii v. Wood (In re Wood)*, 123 B.R. 881 (D.Haw. 1991), *aff'd*, 972 F.2d 1348 (9th Cir.1992) (chapter 7 debtor's refusal to testify at § 341 creditors' meeting is sufficient to deny discharge under 11 U.S.C. § 727(a)(6)(C)).

■■■■ Changing gears, another point needs to be made with respect to the above deficiencies. Even for those deficiencies pertaining solely to Mr. Halishak, Mrs. Halishak is not guiltless under the facts and circumstances as they exist here. While it is the general rule that when a husband and wife file for bankruptcy, whether jointly or separately, the fraud of one will not be imputed to the other,[1] the relationship of husband and wife is unique, normally having, in financial matters, an identity of interest. This makes collusion a constant concern; thus, before the transgressions of one spouse will be discounted against the other, there must exist a strong indication that the parties were not in *pari delicto*. *Accord* 11 U.S.C. § 101(31)(A)(i) (defining an "insider" as a "relative of the debtor."). *See also* 11 U.S.C. § 727(a)(7).[2]

But here, all indications point toward a collaborative effort, with Mrs. Halishak having significantly assisted her husband in his entire bankruptcy process, only filing bankruptcy herself, both now and before, once it appeared that her husband's

---

**1.** *Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa)*, 258 B.R. 192, 196 (9th Cir. BAP 2001).

**2.** This section provides:
(a) The court shall grant the debtor a discharge, unless—
(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider[.]
This provision thus extends the basis for denial of discharge to an insider-debtor's misconduct (even up to one year prior to bankruptcy) in a substantially related bankruptcy case. *Giant Eagle, Inc. v. Monus (In re Monus)*, 294 B.R. 707, 716 (Bankr.N.D.Ohio 2003).

bankruptcies would not obtain the desired results—e.g., saving their home. In this way, the following time-line cannot be ignored:

In 1999, Mrs. Halishak filed a Chapter 13 petition in this Court;

In 2000, Mrs. Halishak's Chapter 13 case is dismissed;

In 2001, Mr. Halishak files a Chapter 7 bankruptcy in California. The case is dismissed the same year;

In 2003, Mr. Halishak files his petition for relief in this bankruptcy case;

In February of 2004, the UST commenced its action against Mr. Halishak to deny discharge, with Mrs. Halishak then filing her Chapter 7 petition shortly thereafter, in April of 2004.

Taken together, these events are demonstrative of a case of tag-teaming, whereby parties attempt to manipulate the bankruptcy process by filing competing bankruptcies. Accordingly, with Mrs. Halishak actively participating in this collaborative effort, it becomes not only difficult, but improper, to separate her actions from that of Mr. Halishak. Eliminating any reasonable doubt as to this conclusion are the last events in the time line: the close proximity between the UST filing its complaint to deny discharge against Mr. Halishak, and then Mrs. Halishak filing her bankruptcy petition.

Consequently, for all the reasons just explained, the deficiencies in the Defendants' respective bankruptcy petitions have strong indicia of fraud, seeming more analogous to a calculated risk as opposed to simply inadvertence and/or mistake. Accordingly, the burden shifts to the Defendants to provided a credible explanation for their actions.

 In the context of § 727(a)(4)(A), a credible explanation is one that is both plausible and, despite all the indications of fraud, is still capable of being believed. This is not an insignificant burden. And in assessing the credibility of the explanation, the Court will not engage in speculation for the debtor, as it is the debtor, and the debtor alone, who is in the best position to know of and be able to explain the event(s) in question. *In re Downey*, 242 B.R. at 14.

 On their burden, the Defendants, both in their respective answers to the UST complaint and through their testimony at the Trial, put forth the following explanations for the deficiencies concerning the respective bankruptcies:

In listing an improper address in his petition, Mr. Halishak explained that such address was where he worked as a consultant, noting that he received his mail at this address. To this end, Mr. Halishak further explained that through his eyes there exists some confusion with the official forms for bankruptcy, pointing out that below the space entitled "Street Address of Debtor" a debtor is asked to provide "County of Residence or of the Principal Place of Business[.]"

On his failure to disclose a prior bankruptcy, Mr. Halishak put forth that it was Mrs. Halishak who prepared his petition, and the mistake was the result of them using his prior bankruptcy petition as a model, wherein presumably no prior bankruptcy was required to be disclosed. As for why the prior case was actually dismissed, Mr. Halishak ascribed it to being in another judicial district when both of the scheduled meeting of creditors were being held. And then because of the tragic events of 9–11, he was unable to return to the district in time to attend the meetings. On their joint failure to list a pending foreclosure against their marital residence, the Defendants ascribed their

omission to confusion, arguing that they believed that the matter was over, having been reduced to judgment.

With respect to the third-party bank accounts, their disclosure was omitted because according to the Defendants, while they had access to the accounts, neither had any ownership interest in the accounts. They further explained that this accommodation was necessary because their financial difficulties had made it impossible to obtain a checking account at any financial institution. The lack of any ownership interest was also given by Mr. Halishak for the omission from his petition of the car he uses.

Taken in isolation, each of these justifications is plausible. Plausible, however, should not be taken to mean that the Defendants' actions were legally proper. Still, if undertaken in good faith, such justifications could serve to blunt any presumption of fraudulent intent. But as now explained, those above justifications offered by the Defendants take on an air more akin to a reckless disregard of the truth as opposed to conduct indicative of good faith. *In re Mazzola,* 4 B.R. 179, 183–84 (Bankr.D.Mass.1980) (discussing distinction between reckless and good faith in the § 727(a)(4) context).

Bankruptcy law demands full and complete disclosure. *In re Keeney,* 227 F.3d at 685. In an oft quoted statement regarding the function of § 727(a)(4), the First Circuit Court of Appeals opined:

11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than

fiction. As we have stated, the successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure. Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.

*Boroff v. Tully (In re Tully),* 818 F.2d 106, 110 (1st Cir.1987) (internal quotations and citations omitted).

Resultantly, since interested parties should not be required to drag the truth from the debtor, a showing of good faith in a § 727(a)(4)(A) matter will often come down to whether a debtor has abided by this cardinal rule: when in doubt, disclose. *Richardson v. Von Behren (In re Von Behren),* 314 B.R. 169, 180 (Bankr.C.D.Ill. 2004). For example, a debtor is likely to be forgiven for simply mislabeling an asset, where its existence is still initially disclosed. *Rothman v. Beeber (In re Beeber),* 239 B.R. 13, 27–28 (Bankr.E.D.N.Y. 1999) (discharge not denied solely because debtor wrongly listed an asset as exempt). However, where a debtor only voluntarily discloses information after its existence is uncovered by a third-party (e.g., a trustee or creditor), good faith is unlikely to be found. *See, e.g., Ansvar Am. Ins. Co. v. Klein (In re Klein),* 114 B.R. 778, 779–80 (Bankr.M.D.Fla.1990) (explaining this concept where a debtor amends their petition).

In contrast, however, to erring on the side of disclosure, the Defendants, whenever they encountered an opportunity, always seemed to find it more expedient to err on the side of not disclosing. Smaller examples already discussed include, the nondisclosure of furniture and an insurance policy; and the inflating and under reporting income and expense. But even more striking, are the following deficiencies.

The Defendants put forth that their failure to disclose their beneficial interest in a car and certain bank accounts was innocent because they reasonably believed, having no title to the property, that they were not required to disclose such interest. However, it is not for a debtor to decide what property interests are worth disclosing and what are not. *Heidkamp v. Whitehead (In re Whitehead)*, 278 B.R. 589, 594 (Bankr.M.D.Fla.2002). And contrary to the position taken by the Defendants, failing to disclose beneficial interests in property is highly suspicious as it involves an arrangement that seeks to accomplish indirectly, what could not be accomplished directly. In fact, a traditional badge of fraud has always been where a debtor transfers property, but retains rights in or the beneficial use the property. *Montey Corp. v. Maletta (In re Maletta)*, 159 B.R. 108, 113 (Bankr.D.Conn.1993).

Moreover, the suspicious nature of the transaction only increases where, as here, the items of property are of more than nominal value, and where the party otherwise retains the attributes of ownership—e.g., paying necessary charges against the property, retaining possession. These points were made explicitly clear by the Sixth Circuit in *In re Keeney*, wherein it was held that the mere retention of a beneficial interest does not lessen the debtor's duty to disclose. And therefore a Chapter 7 debtor's failure to list in his bankruptcy schedules property titled in his parents' name, but which the debtor used and made payments, would warrant a denial of his discharge under § 727(a)(4)(A). 227 F.3d at 686. Consequently, contrary to the position taken by the Defendants, their failure to disclose those items of property for which they only retained a beneficial interest sounds more in fraud rather than an innocent mistake.

Moreover, the Defendants cannot ascribe the failure to disclose such interests to ambiguousness in their respective bankruptcy petitions. In their "Statement of Financial Affairs" the Defendants were required, in question number 14, entitled "Property held for another person," to "[l]ist all property owned by another person that the debtor holds or controls." Similarly, question 10, entitled "other transfers," requires that a debtor disclose any other property transfers. In a similar way, ascribing the omission of the foreclosure action pending against their home to their mistaken belief that the matter had been concluded lacks credibility. Because even if such a belief was subjectively held,—and this does seem quite a stretch considering that the Defendants were still living in the house subject to the foreclosure action—questions four and five on the "Statement of Financial Affairs" ask that a debtor disclose the existence of any lawsuit or the seizure of property not only at the time of the bankruptcy, *but within the year prior.*

Motive also cannot be ignored. By not disclosing the existence of the bank accounts, the Defendants could ensure that persons close to them would not have to get involved in their respective bankruptcies. This same logic applies for the car, with an additional incentive: ensuring that its use would not be interrupted. The Court also cannot accept as a defense the Defendants' implicit assertion that they failed to completely read their petitions. A debtor, especially one that is not represented by legal counsel, is expected to thoroughly review the petition's requirements. *Equibank v. Ward (In re Ward)*, 92 B.R. 644, 647 (Bankr.W.D.Pa.1988). As observed in the case of *Kavanagh v. Leija (In re Leija)*, a debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all respon-

sibility for his statements. Thus, a failure to read the disclosure requirements of a bankruptcy petition would at the very least be reckless, thereby still justify a denial of discharge. 270 B.R. 497, 503–04 (Bankr. E.D.Cal.2001).

Taking this a step further, Mr. Halishak's failure to disclose his prior bankruptcy filing also becomes hard to excuse. Although his past (and presumably first) bankruptcy petition was used as a model for his present petition, the physical location in the petition asking for the disclosure of any prior bankruptcies was all but impossible to overlook. It is set forth, in bold type, just three inches above the location where Mr. Halishak signed the petition, with the space immediately between these locations containing this statement: "I declare under penalty of perjury that the information provided in this petition is true and correct."

Those explanations offered by the Defendants further break under their own weight when, contrary to what has been implied throughout, the deficiencies that exist in their petitions are difficult to ascribe to just a lack of understanding and comprehension with respect to their duties as debtors. Unlike some debtors who come before the Court, the Defendants are not unsophisticated parties; the Defendants, through their hard work and business acumen, were able to acquire a home worth more than one million dollars, not a scenario typically found with an unsophisticated debtor. It has also not gone unnoticed to the Court that, despite each being unrepresented by legal counsel in this matter, the Defendants handled themselves quite well in this lawsuit, articulating their points (both in writing and orally) with clarity, again not a scenario typically encountered with an unsophisticated debtor. *Northeast Fed. Credit Union v. Garcia (In re Garcia)*, 260 B.R. 622, 631 (Bankr.

D.Conn.2001) (considering the debtor's education and business experience when evaluating § 727(a)(4) action); *Harman v. Brown (In re Brown)*, 56 B.R. 63, 67 (Bankr.D.N.H.1985) (considering debtor's sophistication in § 727(a)(4) action). It is therefore hard to fathom that the Defendants would not have been cognizant of the need to be thorough in executing forms having legal significance, whether it was a tax form or, as in this matter, a bankruptcy form.

Finally, the reasons/explanation offered by the Defendants regarding the dismissal of their prior bankruptcy cases are not indicative of good faith. Mrs. Halishak's case was dismissed for inadequate funding, an all but inevitable outcome since she admittedly earned nowhere near sufficient income to adequately fund a plan of reorganization. But especially lacking of good faith is Mr. Halishak referring to the tragic events of 9–11 as a justification for his absence at not one, but two meetings of creditors.

As an initial point of observation, the creditors' meetings to which the Defendant refers were to be conducted in California, not New York City; and both meetings were presumably not scheduled immediately following 9–11. Thus, it becomes difficult to see how Mr. Halishak's presence at the creditors meeting was absolutely precluded by the events of 9–11. Moreover, even if this Court were inclined to give Mr. Halishak the benefit of the doubt, this inclination ended when Mr. Halishak simply continued his same pattern of conduct in this case, having failed to attend creditors meetings and an examination conducted under Bankruptcy Rule 2004.

As a result, it is this Court judgment that ascribing the failure to attend not one, but two meetings of creditors solely on the tragic events of 9–11 seems more aimed to

garner sympathy by playing on the patriotism of a court of the United States, rather than based in reality. At the very least, the use of such an profound explanation requires some corroborating evidence, but none here was offered. For example, it would have been helpful if Mr. Halishak could have produced a docket showing that the matter of his inability to attend the creditors' meetings had been brought to the court's immediate attention in California.

Based then upon the foregoing analysis, there exist inherent weaknesses with those justifications offered by the Defendants, making such justifications legally insufficient to overcome the presumption of fraud that, based upon first part of this discussion, was already found to exist in their respective bankruptcy cases. Therefore, with the provision's other elements also being satisfied, § 727(a)(4)(A) becomes applicable in both of the Defendants' respective bankruptcy cases, thereby preventing the entry of an order for discharge. Accordingly, each of the Defendants' bankruptcy discharges shall be denied. Pursuant to Federal Rule of Bankruptcy Procedure 7052, this Opinion shall constitute this Court's findings of fact and conclusions of law.

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that, pursuant to 11 U.S.C. § 727(a)(4)(A), the bankruptcy discharge of the Defendant/Debtor, William Halishak, be, and is hereby, DENIED.

It is **FURTHER ORDERED** that the Clerk, U.S. Bankruptcy Court, serve a notice of this Order upon the Debtor, Attorney for Debtor, the Trustee, and all of the Creditors and Parties in Interest.