*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0341P (6th Cir.)
File Name: 00a0341p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: MILTON KEENEY,

      *Debtor.*

_____

MILTON W. KEENEY,

     *Appellant,*

  *v.*

MARY JEAN SMITH,

     *Appellee.*

No. 99-5949

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 98-00556—Jennifer B. Coffman, District Judge.

Argued: June 15, 2000

Decided and Filed: September 26, 2000

Before: KRUPANSKY, NORRIS, and SUHRHEINRICH,
Circuit Judges.

—————————————

**COUNSEL**

**ARGUED:** Joseph L. Baker, ZIEGLER & SCHNEIDER, P.S.C., Covington, Kentucky, for Appellant.  Charles C. Adams, ADAMS & ADAMS, Somerset, Kentucky, for Appellee. **ON BRIEF:** Michael L. Baker, ZIEGLER & SCHNEIDER, P.S.C., Covington, Kentucky, for Appellant. Charles C. Adams, ADAMS & ADAMS, Somerset, Kentucky, for Appellee.

—————————————

**OPINION**

—————————————

ALAN E. NORRIS, Circuit Judge.  Milton W. Keeney, debtor in this bankruptcy action, appeals from the order of the bankruptcy court denying his petition for discharge in bankruptcy.  The denial was based upon the court's finding that he had concealed property interests and made a false oath. We affirm the order.

I.

In 1971, Appellee, Mary Jean Smith, obtained a judgment against Keeney for injuries she sustained in a car accident. Smith has been unable to collect on this judgment.

In 1982, a tract of real property was purchased in the names of Keeney's parents, Winfred and Ruth Keeney.  They mortgaged this property to Mutual Federal Savings and Loan ("Mutual Federal").  Keeney and his then-wife, Barbara Keeney, lived on the property for about a year, and paid his parents no rent.  Keeney or his business entity, K-Bar Trailer Manufacturing ("K-Bar"), made all of the mortgage payments for the property.  In 1985 Keeney executed a note for $89,960 to Mutual Federal secured by a new mortgage from Keeney's parents on this property, as well as all of K-Bar's inventory, fixtures and equipment.  Keeney or K-Bar made all the

Keeney claims that even if he did make a false oath, it was not done knowingly, and that the bankruptcy court failed to find the intent element. Although the court was brief, it did find that Keeney had the requisite intent when not listing his interest in the property in his schedules. The bankruptcy court did not clearly err in inferring from the circumstances of this case that Keeney knowingly (or at least with reckless disregard) omitted his interest in the property with an intent to defraud. Keeney held a substantial beneficial interest in the properties, and the facts of this case make the bankruptcy court's inference of intent entirely proper. Accordingly denial of discharge under section 727(a)(4)(A) was proper.

## III.

For the foregoing reasons, the denial of discharge is affirmed.

payments on this note and mortgage. This property was eventually transferred by his parents for the sum of $15,000, which was paid to Mutual Federal.

Keeney placed the winning bid for a second piece of real estate in 1983, which was purchased in his parents' names for the sum of $61,700. Of that sum, $52,000 was borrowed from Mutual Federal. Keeney or K-Bar paid $9255 down for this property from K-Bar's checking account, and thereafter Keeney paid $52,455 from K-Bar's checking account for the balance due on the purchase price. Keeney and his wife moved onto this property at about the time it was conveyed to his parents and lived there until the time of their separation in 1994 or 1995. Keeney continues to live there. Keeney or K-Bar paid for improvements on this property and made all mortgage payments. Keeney does not pay rent to his parents for his use of the property.

Glen Gadberry, Assistant Vice President at Alliance Bank, formerly Mutual Federal, testified that the only remaining records relating to the above property mortgages were in Keeney's name, rather than his parents', although many of the records had been destroyed.

Keeney filed for bankruptcy in 1996. Smith filed a complaint with the bankruptcy court seeking to bar Keeney's discharge in bankruptcy, alleging that the real estate conveyances were made in an effort to conceal property actually belonging to Keeney.

The bankruptcy court denied Keeney discharge in bankruptcy under 11 U.S.C. § 727(a)(2)(A), finding that he had continuously concealed his beneficial interest in the above described property:

The record in this case indicates that the debtor had property titled in his parents' names while retaining a beneficial interest in it, so as to invoke the continuous concealment doctrine. While his parents had legal title to two different tracts of real estate, the defendant made his home on both at various times. He has stated that he

made all the mortgage payments on them, and a down payment on one. In examining the defendant's intent, the Court notes that these transfers took place while a judgment was pending against him in favor of the plaintiff. The defendant listed none of these property interests on his schedules when he filed his bankruptcy case.

*Smith v. Keeney* (In re *Keeney*), 221 B.R. 401, 403 (Bankr. E.D. Ky. 1998). The court further found that Keeney had violated 11 U.S.C. § 727(a)(4)(A) by making a false oath when he omitted the property from his bankruptcy schedules. *Id.* at 404.

The district court affirmed the decision of the bankruptcy court. It also relied upon the continuing concealment doctrine to conclude that Keeney had concealed property in violation of 11 U.S.C. § 727(a)(2)(A). The court noted that Keeney produced only self-serving affidavits from himself and his parents stating that he had no interest in the property, and that no explanation was given for placing property that Keeney purchased and used into his parents' names. The district court also concluded that Keeney had made a false oath in violation of 11 U.S.C. § 727(a)(4)(A) by failing to disclose his interests in the property to the bankruptcy court.

## II.

Keeney appeals the denial of discharge in bankruptcy to this court, arguing that application of the continuous concealment doctrine to bar his discharge was improper. This court reviews the bankruptcy court's findings of fact for clear error, and the district court's conclusions of law *de novo*. *See Wesbanco Bank Barnesville v. Rafoth* (In re *Baker & Getty Fin. Servs., Inc.*), 106 F.3d 1255, 1259 (6th Cir.), *cert. denied,* 522 U.S. 816 (1997). The elements of a violation of 11 U.S.C. § 727 must be proven by a preponderance of the evidence to merit denial of discharge. *See Barclays/American Bus. Credit, Inc. v. Adams* (In re *Adams*), 31 F.3d 389, 394 (6th Cir. 1994), *cert. denied,* 513 U.S. 1111 (1995). The Bankruptcy Code should be construed liberally in favor of the

(A) made a false oath or account[.]

11 U.S.C. § 727(a)(4)(A) (1993).

In order to deny a debtor discharge under this section, a plaintiff must prove by a preponderance of the evidence that: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case. *See Beaubouef v. Beaubouef* (In re *Beaubouef*), 966 F.2d 174, 178 (5th Cir. 1992). Whether a debtor has made a false oath under section 727(a)(4)(A) is a question of fact. *See Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987).

"'Complete financial disclosure'" is a prerequisite to the privilege of discharge. *Peterson*, 172 F.3d at 967. The Court of Appeals for the Seventh Circuit has explained that intent to defraud "involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." In re *Chavin*, 150 F.3d 726, 728 (7th Cir. 1998). A reckless disregard as to whether a representation is true will also satisfy the intent requirement. *See id.* "'[C]ourts may deduce fraudulent intent from all the facts and circumstances of a case.'" *Williamson*, 828 F.2d at 252 (citation omitted). However, a debtor is entitled to discharge if false information is the result of mistake or inadvertence. *See Gullickson*, 108 F.3d at 1294. The subject of a false oath is material if it "'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *Beaubouef*, 966 F.2d at 178 (citation omitted).

Keeney argues that because he has no interest in the subject property, he could not have made a false oath concerning it. As explained in the previous section, there was no error in the finding that Keeney held a beneficial interest in the property. By omitting this interest from his filings he made a false oath.

bankrupt continues to use the property as his own is sufficient to constitute a concealment.").

Keeney points out that this court has never been presented with a case concerning continuing concealment, and urges us not to adopt the doctrine. Alternatively, he cites *Rosen*, *supra*, to support his argument that the doctrine's application is not proper in this case. In *Rosen*, however, the Court of Appeals for the Third Circuit reversed the bankruptcy court's denial of discharge because there was a material issue of fact on the intent element, so that the case was not proper for summary judgment disposition. *Rosen*, 996 F.2d at 1532. Application of the continuing concealment doctrine is proper under the facts of this case, and we join those having adopted the doctrine.

Keeney also notes that under Kentucky law, Smith cannot recover the subject property because the statute of limitations has run. *See* KY. REV. STAT. ANN. §§ 413.120, 413.130 (Banks-Baldwin 1998). He argues that even if a violation of section 727(a)(2)(A) can otherwise be shown, that fact is irrelevant because Smith is too late to reach the property. This argument fails. "[C]oncealment or transfer under § 727(a)(2) may occur even if no creditors are harmed by it. 'Proof of harm is not a required element of a cause of action under Section 727.'" *Peterson v. Scott* (In re *Scott*), 172 F.3d 959, 968 (7th Cir. 1999) (citation omitted).

### B.

In addition to relying upon a violation of section 727(a)(2)(A), the bankruptcy and district courts also based the denial of discharge on Keeney's making of a false oath when he omitted his beneficial interest in the properties from his benefit schedules filed with the bankruptcy court, in violation of section 727(a)(4)(A).

(a) The court shall grant the debtor a discharge, unless—
. . . .
(4) the debtor knowingly and fraudulently, in or in connection with the case—

debtor. *See Gullickson v. Brown* (In re *Brown*), 108 F.3d 1290, 1292 (10th Cir. 1997).

### A.

Keeney first argues that the bankruptcy and district courts erred in applying the continuing concealment doctrine to find that he had violated section 727(a)(2)(A). That section specifies that:

(a) The court shall grant the debtor a discharge, unless—
. . .
(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has . . . concealed, or has permitted to be . . . concealed—

(A) property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A) (1993). This section encompasses two elements: 1) a disposition of property, such as concealment, and 2) "a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property." *Hughes v. Lawson* (In re *Lawson*), 122 F.3d 1237, 1240 (9th Cir. 1997).

The bankruptcy and district courts determined that Keeney had concealed his beneficial interest in the two properties by placing them in his parents' names, with the requisite intent to defraud. Keeney argues on appeal that he had nothing to conceal because he has no interest in the property. A beneficial interest of ownership in the property can be inferred, however, from Keeney's payment for and use of the properties, including his rent-free residence on each and payment of all mortgage obligations. As noted by the district court, no explanation was provided as to why the properties were titled in the parents' names. Courts have found that a debtor retained a beneficial interest in property under similar circumstances. *See, e.g.*, *Hughes*, 122 F.3d 1237; *Thibodeaux v. Olivier* (In re *Olivier*), 819 F.2d 550 (5th Cir. 1987). Under

the facts of this case, the bankruptcy court did not commit clear error in its determination that Keeney held a beneficial interest in the properties. The requisite intent to hinder, delay, or defraud was also permissibly inferred by the bankruptcy court in this case. *See* In re *Snyder*, 152 F.3d 596, 601 (7th Cir. 1998) (citation omitted) (a debtor's intent "'may be inferred from the circumstances surrounding his objectionable conduct'").

Keeney next argues that even if he holds a beneficial interest in the subject properties, this court should not recognize the continuous concealment doctrine to bring the violation within the requirements of section 727(a)(2)(A). That statute specifies that both elements (the act of concealment and requisite intent) must occur within a year before the bankruptcy petition is filed. 11 U.S.C. § 727(a)(2)(A) (1993). The bankruptcy and district courts relied upon a continuing concealment to bring the transfers of property in this case, all performed over one year before filing, within the statute. "Under the 'continuing concealment' doctrine, a transfer made and recorded more than one year prior to filing may serve as evidence of the requisite act of concealment where the debtor retains a secret benefit of ownership in the transferred property within the year prior to filing." *Hughes*, 122 F.3d at 1240; *see also Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993) (describing the doctrine by stating that "a concealment will be found to exist during the year before bankruptcy even if the initial act of concealment took place before this one year period as long as the debtor allowed the property to remain concealed into the critical year"). In *Hughes*, the Court of Appeals for the Ninth Circuit found a continuing concealment where a debtor retained an interest in her house after transferring it to her mother, because the debtor had lived in the house and subordinated her mother's deed of trust in order to obtain a loan. *Id.* at 1241. In *Friedell v. Kauffman* (In re *Kauffman*), 675 F.2d 127, 128 (7th Cir. 1981) (per curiam), the court concluded that a debtor held a beneficial interest in a house where the debtor lived in the house, made mortgage,

tax, and escrow payments, and used the house as collateral for loans.

*Thibodeaux*, 819 F.2d 550, presents a situation similar to that here. Olivier was involved in a car accident that injured Thibodeaux. After the accident, Olivier transferred title in his home to his mother for, in effect, no consideration. The Oliviers continued to live in the house and be responsible for all costs associated with it. Thibodeaux obtained a judgment against Olivier, but was unable to collect. Six years later, Olivier filed for bankruptcy. The Court of Appeals for the Fifth Circuit affirmed the denial of discharge under section 727(a)(2)(A). The court noted that the intent element could be inferred from Olivier's continued use of the transferred property. *Id.* at 553. The court then affirmed the use of the doctrine of continuing concealment in that case:

> [T]he Oliviers' motivation, their continuing occupancy of the house rent-free, their prompt return of all the "purchase money," and their acts of ownership such as insuring and maintaining the property taken together amply support the conclusion that notwithstanding the purportedly complete transfer they retained a significant beneficial interest in the property and have "continue[d] to use the property as [their] own.". . . .
>
> . . . Here the purported transfer by appellants occurred more than a year before bankruptcy, but appellants continued the concealment of their secretly retained interest in the property. The courts below relied on the well-settled doctrine that in this character of situation the concealment of an interest in an asset that continues, with the requisite intent, into the year before bankruptcy constitutes a form of concealment which occurs within the year before bankruptcy and, therefore, that such concealment is within the reach of section 727(a)(2)(A).

*Id.* at 554-55; *see also Friedell*, 675 F.2d at 128 ("A concealment . . . need not be literally concealed. The transfer of title with attendant circumstances indicating that the