In re Harold M. ROWLAND, Debtor.

James R. Warren, Trustee, Plaintiff

v.

Harold M. Rowland, Defendant.

Bankruptcy No. 08–33872.
Adversary No. 09–3204.

United States Bankruptcy Court,
S.D. Ohio,
Western Division,
at Dayton.

Dec. 9, 2010.

Harold M. Rowland, pro se.

Joseph M. Hutson, Cohen Todd Kite & Stanford LLC, Cincinnati, OH, Tabitha M. Hochscheid, Cohen, Todd, Kite & Stanford, LLC, Richard D. Nelson, Cincinnati, OH, for Debtor.

## DECISION GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING THE DISCHARGE OF DEBTOR HAROLD M. ROWLAND

LAWRENCE S. WALTER, Bankruptcy Judge.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, and the standing General Order of Reference in this District. This proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

This matter is before the court on the Motion for Summary Judgment filed by Plaintiff James R. Warren, Trustee [Adv. Doc. 35]; the Response filed by Defendant–Debtor Harold M. Rowland [Adv. Doc. 37]; and the Reply Memorandum filed by the Plaintiff [Adv. Doc. 38]. The facts underlying this action are established by the Complaint [Adv. Doc. 1] and Answer [Adv. Doc. 7]; the "statement of material facts" contained in Plaintiff's Motion for Summary Judgment and the corre-

spondingly numbered responses to those facts contained in Defendant's Response; the affidavits of Michele Gravens (amended) [Adv. Doc. 31], Frederick A. Williams [Adv. Doc. 30], James A. Warren [Adv. Doc. 33], and Joseph Hutson [Adv. Doc. 34] in support of the Motion for Summary Judgment; and the affidavit of Harold M. Rowland [Adv. Doc. 36] in opposition. In addition, the Motion for Summary Judgment incorporates by reference three transcripts: 1) Harold M. Rowland § 341 Meeting of Creditors [Adv. Doc. 32]; 2) Deposition of Lorena M. Rowland [Adv. Docs. 27 & 47]; and 3) Deposition of Douglas Rowland [Adv. Doc. 46].

## FACTUAL AND PROCEDURAL HISTORY

The Plaintiff, James R. Warren, Trustee ("Trustee"), filed an adversary complaint against the Defendant–Debtor, Harold M. Rowland ("Debtor"), seeking denial of Debtor's discharge under 11 U.S.C. § 727(a)(2), (3) and (4) and also seeking the same relief by virtue of an alleged fraudulent transfer pursuant to Ohio Rev. Code § 1336.

Generally, the facts underlying the Trustee's causes of action pertain to certain prepetition transfers of property by Debtor without consideration that were not properly disclosed in Debtor's schedules and statement of financial affairs as initially filed on August 5, 2008. Those initial filings stated that Debtor owned no real estate, that his interest in Our Hero Subs Ltd. LLC ("OHS") had a value of $0.00, and that he had made no transfers of property within the previous two years. All of those statements proved to be incorrect. The property interests at issue in this matter came to light during creditor questioning at the first meeting of creditors held pursuant to 11 U.S.C. § 341 on October 3, 2008 ("§ 341 Meeting"), and were not disclosed on the docket until

amended statements of financial affairs were filed on March 12 and 24 of 2009.

In chronological order, the property transfers uncovered during questioning at the § 341 Meeting are as follows:

1. On October 3, 2005, roughly three years before filing bankruptcy, Debtor transferred the real estate located at 415 Selma Road, Springfield, Ohio to his wife, Lorena M. Rowland without consideration. One of the four Our Hero[1] stores (sandwich shops) owned by Debtor or OHS operates on this real estate. ("Selma Road Property").

2. On March 13, 2007, within two years prior to his bankruptcy filing, Debtor transferred the real estate located at 4360 Everett Road, Urbana, Ohio to his wife without consideration. This was and remains the residence of Debtor and his wife. ("Everett Road Property").

3. On or about July 1, 2008, Debtor "transferred his interest" in the Our Hero store located on Derr Road. This transfer was manifested only by a transfer of the revenues of the store to a bank account in the name of L. Rowland Enterprises, LLC, ("Rowland Enterprises") an entity formed by Debtor's wife on July 1, 2008, approximately two weeks prior to Debtor's bankruptcy filing. At the same time, Debtor transferred the revenues from the Selma Road Our Hero store to a different bank account in the name of Rowland Enterprises. In neither case was there a formal asset purchase agreement or other written memorialization of the transaction.

4. Although not a transfer, Debtor failed to disclose in his schedules that he co-owned with his son the real estate located at 6921 Selma Pike, South Charleston, Ohio ("Selma Pike Property").

Debtor's sole source of income was and is revenue from OHS. Most of Debtor's debt is attributable to his guarantee of OHS business debt. At the time of the Selma Road Property transfer, OHS was unable to pay all of its debts and had a number of its checks payable to a vendor, Ellenbee Leggett Co., Inc. ("Ellenbee"), returned for nonsufficient funds. Likewise, Debtor was unable to pay all of his personal debts during this period.

On February 2, 2006, Ellenbee sued Debtor and OHS in state court on the delinquent account in the amount of $106,929.82. It was during the pendency of this suit that Debtor transferred the Everett Road Property to his wife. Ellenbee ultimately obtained judgment against OHS and Debtor on February 4, 2008. On or about July 21, 2008, just two weeks before Debtor's bankruptcy filing, Debtor transferred the revenues from the Derr Road and Selma Road Our Hero stores to accounts in the name of his wife's new company, Rowland Enterprises.

---

**1.** Debtor's representations about how many stores he owns or operates are somewhat inconsistent, but it is clear that four stores were operational at the time of the bankruptcy filing. To avoid confusion, the court shall refer to the business entity Our Hero Subs Ltd. LLC as "OHS" and the individual sub stores as "Our Hero." Historically, OHS purportedly owned all of the Our Hero stores, but Debtor and others sometimes refer to Debtor's personal ownership of the stores. Also, in some instances, Debtor claims to have transferred certain stores to his wife or her newly formed LLC. Therefore, the designation "Our Hero" in this decision does not necessarily imply ownership by OHS, but is only intended to refer to the business enterprise ostensibly operating as an Our Hero sub shop at a particular location.

The Derr Road and Selma Road stores remain operational as Our Hero stores with the same signage. Williams Mechanical Services, LLC ("Williams") provided services at the Derr Road and Selma Road stores over a period of time and as recently as July 2008. These services were directly procured by Debtor who also personally signed checks for payment to Williams. Debtor did not inform Williams that the stores had been transferred and Debtor otherwise appeared to be the owner of the stores.

## LEGAL ANALYSIS

The appropriate standard to address the Trustee's motion for summary judgment is contained in Fed.R.Civ.P. 56(c) and incorporated in bankruptcy adversary proceedings by reference in Fed. R. Bankr.P. 7056. Rule 56(c)(2) states in part that a court should grant summary judgment to the moving party if:

> the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c)(2). In order to prevail, the moving party, if bearing the burden of persuasion at trial, must establish all elements of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thereafter, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 586–88, 106 S.Ct. 1348.

■ In this case, the Trustee seeks summary judgment on four statutory causes of action with the ultimate result of denying Debtor's discharge: Ohio Rev. Code § 1336 and 11 U.S.C. § 727(a)(2), (a)(3), and (a)(4). Two of these claims are easily dispensed with. First, the court need not decide whether Debtor's transfers constitute fraudulent transfers under Ohio Rev.Code § 1336 because such a determination does not compel denial of discharge, the only remedy the Trustee seeks.[2] The pattern of conduct forming the basis of the alleged fraudulent transfers is relevant, however, and will be discussed below. Second, there is little evidence to support denial of discharge under 11 U.S.C. § 727(a)(3) for Debtor's alleged failure to keep or preserve financial information. The Trustee claims that Debtor has failed to produce his 2008 income tax returns, but Debtor indicates, albeit not in a sworn statement, that he has not yet filed his tax returns and has received an extension to do so. The purported transfer of two Our Hero stores from Debtor's LLC to his wife's LLC is woefully underdocumented and appears to be nothing more than an informal understanding between the spouses coupled with the transfer of bank funds, but the fund transfers are nevertheless documented by available bank statements. Otherwise, it is not clear what documentation Debtor has not maintained, other than the deeds transferring the parcels of real estate to his wife, records readily obtainable from the county recorder's office.

---

2. The Trustee filed a separate adversary proceeding, case number 10–3111, against Lorena M. Rowland to avoid and recover fraudulent transfers resulting in a default judgment entered November 1, 2010.

The other two causes of action under 11 U.S.C. § 727(a)(2) and (a)(4) require more thorough consideration. Generally, such objections to discharge involving a fact-intensive analysis related to fraudulent intent are not amenable to disposition by summary judgment. *See Hoover v. Radabaugh,* 307 F.3d 460, 467 (6th Cir.2002). *See also Mercantile Peninsula Bank v. French (In re French),* 499 F.3d 345, 353–54, 356 (4th Cir.2007); 6 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* § 727.16[7] (16th ed. 2010). However, in this case Debtor has agreed with nearly all of the alleged facts. Furthermore, Debtor's affidavit filed in support of his response to the motion for summary judgment does not effectively contradict the critical facts establishing fraudulent intent. Consequently, the entry of summary judgment is appropriate in this case.

### 11 U.S.C. § 727(a)(4)—False Oath or Account

■ Under this section of the statute, a debtor may be denied a discharge if "(4) the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account." 11 U.S.C. § 727(a)(4)(A). To prevail, the Trustee must prove the following by a preponderance of the evidence: "1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case." *Keeney v. Smith (In re Keeney),* 227 F.3d 679, 685 (6th Cir.2000); *Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 178 (5th Cir.1992). A succinct amplification of these elements is also found in *Keeney:*

> " 'Complete financial disclosure' " is a prerequisite to the privilege of discharge. *Peterson,* 172 F.3d at 967. The Court of Appeals for the Seventh Circuit

has explained that intent to defraud "involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin,* 150 F.3d 726, 728 (7th Cir.1998). A reckless disregard as to whether a representation is true will also satisfy the intent requirement. *See id.* " '[C]ourts may deduce fraudulent intent from all the facts and circumstances of a case.' " *Williamson,* 828 F.2d at 252 (citation omitted). However, a debtor is entitled to discharge if false information is the result of mistake or inadvertence. *See Gullickson,* 108 F.3d at 1294. The subject of a false oath is material if it " 'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.' " *Beaubouef,* 966 F.2d at 178 (citation omitted).

*Keeney,* 227 F.3d at 685–86.

■ As is frequently the case, the alleged false oath at issue in this instance relates to Debtor's schedules and statement of financial affairs which a debtor declares to be true and correct under penalty of perjury. *See, e.g., Keeney,* 227 F.3d at 685–86. Debtor was also under oath during his § 341 Meeting testimony. There is no question then that the first element, a statement by Debtor under oath, is satisfied. It is also clear that the failure to correctly list or otherwise disclose all assets is a falsehood that relates materially to the bankruptcy case. Nothing is more fundamental to a Chapter 7 bankruptcy case than the forthright disclosure of a debtor's assets and liabilities, essential information for administering the estate and an absolute prerequisite to a debtor's discharge. *United States v. Ellis,* 50 F.3d 419, 423–24 (7th Cir.1995). What

remains to be determined is whether Debtor knew the statement was false and made the statement with fraudulent intent. Following are the specific items Debtor failed to disclose or misleadingly disclosed in his schedules and statement of financial affairs:

1. Debtor's transfer of his personal residence, the Everett Road Property, to his wife Lorena M. Rowland approximately one and one half years before his bankruptcy filing.

2. Debtor's co-ownership with his son, Douglas Rowland, of the Selma Pike Property.

3. Debtor's transfer of his interest, or at least the revenues from, his Selma Road and Derr Road Our Hero stores to Rowland Enterprises approximately two weeks before his bankruptcy filing and his related valuation of his interest in OHS at "$0.00" in his schedules.

■ With respect to the first two items, Debtor is entitled to the benefit of the doubt despite the skepticism that naturally arises from the circumstances of this case. Regarding the Everett Road Property, Debtor testified at his § 341 Meeting that he transferred it to his wife "[a] couple 2 or three years ago, 2, I don't know what date...." (H. Rowland § 341 Meeting Trans., Oct. 3, 2008, at 8, Adv. Doc. 32). Because the statement of financial affairs only requires disclosure of transfers within the previous two years, it is possible that Debtor supposed the transfer was outside those parameters or simply forgot about the transfer. His affidavit does not directly address the issue of non-disclosure of this transfer, but rather suggests possible non-fraudulent motives for the transfer. On the other hand, the affidavit includes the curious statement that "I did not know if my name was on the property at the time that the bankruptcy was filed." (H.

Rowland Aff., May 30, 2010, ¶ 5, Adv. Doc. 36). Uncertainty about one's property ownership at the time of completing bankruptcy schedules would seemingly prompt some due diligence or at least favor disclosure rather than nondisclosure. Nevertheless, while Debtor's failure to ascertain the date of transfer before making a sworn statement might be characterized as a dumb mistake or carelessness, the limited facts now before the court do not conclusively establish fraud or recklessness with respect to this specific single act of nondisclosure.

■ As for Debtor's failure to disclose his co-ownership of the Selma Pike Property, he provides no specific defense and does not address the issue in his affidavit. However, at his § 341 Meeting he stated that he has no interest in the property and that it is owned by his son Douglas Rowland. The depositions of both Lorena Rowland and Douglas Rowland corroborate, albeit somewhat confusedly, their general belief that the Selma Pike Property is owned solely by Douglas and that Debtor was only intended to be a co-signer on the loan note. Douglas also testified that he resides on the property and has been solely responsible for expenses related to the property, including the mortgage and insurance coverage. It is not unreasonable to suppose that Debtor regarded the property as belonging to his son, even if he was mistaken. That mistaken belief is not consistent with fraudulent intent. The court notes, however, that while Debtor enjoys the benefit of the doubt on each such transaction, in the aggregate they begin to suggest a pattern of conduct consistent with a knowing and fraudulent intent. *See Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 724 (6th Cir. BAP 1999) (intent may be inferred from course of conduct).

■ That leaves for consideration only the undisclosed transfers of revenues from the two Our Hero stores and the valuation of Debtor's interest in OHS at zero. Debtor provided no explanation for his failure to disclose these transfers either during his § 341 Meeting or in his affidavit. Nor is there any explanation or defense anywhere else in the record before the court. This lack of response is not insignificant. The current version of Fed.R.Civ.P. 56 (incorporated by Fed. R. Bankr.P. 7056) states in relevant part as follows:

> *Opposing Party's Obligation to Respond.* When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed.R.Civ.P. 56(e)(2).

The failure to disclose these transfers appears indefensible. The Our Hero stores are of central concern to Debtor and to his creditors. This business enterprise was the primary source of his debt, the only source of income for he and his wife, and the primary catalyst of his financial difficulties and ultimate bankruptcy filing. His statement of financial affairs reveals numerous judgments or pending lawsuits against Debtor and OHS. The two stores that continue in business and presumably have some value were "transferred" to his wife's newly formed business entity approximately two weeks before he filed bankruptcy. He retained in his own LLC the remaining stores which, according to his testimony at the § 341 Meeting, are not solvent and have just enough assets to close them down. Debtor does not claim to have forgotten about the transfers of the store revenues, nor would that be a reasonable inference given this context. The only conclusion that can be drawn is that Debtor attempted to remove the two profitable stores or their funds from the reach of his creditors and knowingly omitted this information from his schedules with the fraudulent intention of hiding the assets from his creditors.

These circumstances, compounded by his failure to provide any explanation or defense, are sufficient to deny Debtor his discharge. But Debtor's testimony at the § 341 Meeting coupled with his wife's deposition testimony provide further confirmation that Debtor intentionally and fraudulently omitted this critical information from his schedules and statement of financial affairs, that he had no intention of making full disclosure to the trustee, and that he continued to resist disclosure even when confronted with the facts.

It is important to note that throughout the § 341 Meeting, beginning with preliminary questioning by James Warren, the Trustee, Debtor had numerous obvious opportunities to disclose the transfers, but avoided the subject until forced to deal with it under direct questioning by creditors. All of the quotations from the transcript that follow are in chronological order.

James Warren: Okay, your picture ID and Social Security Number check out just fine. Did you sign the petition schedule statements and related documents and is the signature there your own?

Harold Rowland: Yes.

James Warren: Did you read them before you signed them?

Harold Rowland: Yes.

James Warren: And you're personally familiar with the information that's contained in them?

Harold Rowland: Yes.

James Warren: To the best of your knowledge, is it true and correct?

Harold Rowland: Yes.

James Warren: True and correct, any errors or omissions to bring to my attention at this time?

Harold Rowland: No.

James Warren: Have you listed all your assets?

Harold Rowland: Yes.

(H. Rowland § 341 Trans. at 1–2).

During the initial questioning of Debtor about OHS, he is notably indefinite about how many stores he has and avoids an obvious opportunity to explain that two stores are no longer a part of his LLC:

Roger Luring:[3] .... It was checked off as a consumer case, but it really is a business case. He had at one time under a business entity called Our Hero Subs, uh, Five? Five submarine shops?

Harold Rowland: Yes.

Roger Luring: And how many are operating now?

Harold Rowland: Uh, three.

Roger Luring: Three, and so he had a corporation, Mr. Warren . . .

Harold Rowland: Uh, four, one's closed down.

Roger Luring: Alright, that operated, these are primarily business debts that he's personally obligated for.

James Warren: Okay, well that's okay. So you still have three of them that are running, three Our Hero Subs?

Harold Rowland: Yeah, uh huh.

James Warren: And this is a limited liability company, is that what it is?

Harold Rowland: Yes.

James Warren: Okay and are you the only one that has any interest in it?

Harold Rowland: Yes.

James Warren: Now, what's the financial situation of the LLC, are they solvent?

Harold Rowland: No, there's just enough to close them down.

(H. Rowland § 341 Trans. at 2–3).

On two occasions, the Trustee delved into the assets and circumstances of Lorena Rowland, and in both instances, Debtor revealed as little as possible. The following selection from the second set of questions illustrates how Debtor provided limited and sometimes misleading answers without appropriate explanation, volunteering nothing about Rowland Enterprises until asked a direct question:

James Warren: Let's see, Lorena M. Rowland, is that your wife?

Harold Rowland: Yes, sir.

James Warren: And is she on the lease or something?

Harold Rowland: Yeah, she's on the lease on another property, but she's not on my lease. She's on a lease, we joined, had a lease joint, myself and her on a property.

James Warren: Where is that?

Harold Rowland: What's the address?

James Warren: Yeah.

Harold Rowland: It's uh, Derr Road address, it's uh . . .

James Warren: Here in Springfield?

Harold Rowland: Yes.

James Warren: What is that, a business place?

Harold Rowland: Yeah, uh huh.

James Warren: What goes on there?

Harold Rowland: That's her, she has a, that's where she's employed at.

---

3. Roger Luring appeared as counsel for Debtor at the § 341 Meeting.

James Warren: Oh, I see. What kind of business she have?

Harold Rowland: It's a sub shop. It's Rowland's Sub Shop.[4]

James Warren: Oh, it's a sub, she has her own sub shop, okay.

Harold Rowland: Yeah, Rowland Enterprises.

James Warren: But that one's not going un ... she's all operational and?

Harold Rowland: Yes, sir.

(H. Rowland § 341 Trans. at 5–6).

During questioning by creditors about the location of "Rowland's Sub Shop" and the time of transfer, Debtor persists with incomplete and vague answers, avers the probable untruth that his wife arranged financing and bought the store equipment from the bank, and never makes it clear that there are two stores under the auspices of Rowland Enterprises:

Joseph Hutson: Can I ask one more question? I'm sorry. I think the Trustee may have covered this earlier, I just didn't catch it, but the Rowland's Sub Shop or Rowland's Enterprises, what address is that located at?

Harold Rowland: Um, that's on Derr Road, I don't have that, I don't remember that ...

Joseph Hutson: Derr Road, how do you spell the name of the road?

"Tony" Williams: D E R R

Joseph Hutson: And that's operated by the wife right now?

Harold Rowland: Uh huh.

Joseph Hutson: Is that location formerly a Our Hero Subs Shop?

Harold Rowland: They were probably under Our Hero, but she's the one that financed all the equipment and that and she bought that off of the bank.

Joseph Hutson: Okay, when did that change from Our Hero to Rowland's Sub Shop?

Harold Rowland: She just um, it wasn't an LLC until later, but uh ...

Roger Luring: Answer his question. When did that bank deal happen? When did the transfer go to her?

Harold Rowland: You mean on the equipment? When we opened?

Roger Luring: The transfer of the shop, it went over to from Our Hero's to Rowland Sub. When did that occur?

Harold Rowland: That occurred quite some time ago but we didn't have it ...

Roger Luring: Help me out. What year?

Harold Rowland: It's been this year probably.

Joseph Hutson: Okay, that happened in 2008?

Harold Rowland: Huh?

Joseph Hutson: That happened in 2008?

Harold Rowland: 2008, transferred, for 2008 yeah.

(H. Rowland § 341 Trans. at 11–12).

Debtor's attempts to characterize his wife as an independent prime mover in taking control of the Our Hero stores, arranging an equipment purchase through the bank, and forming her own LLC are dramatically undercut by her own testimony. From her deposition, it is abundantly clear that Mrs. Rowland has no business or managerial experience whatsoever. Her only experience was as a cook and she repeatedly stated that she knew nothing about the financing or other business as-

---

4. It is important to note that the sub shops remained Our Hero shops in all observable respects including signage, menus, employees, etc. This becomes more clear during the § 341 testimony and is conclusively confirmed by Lorena Rowland during her deposition. Referring to the shop as "Rowland's Sub Shop" is misleading.

pects of the shops. A few excerpts from her deposition transcript are illustrative:

Q: Okay. What happened to that money?

A: Well, I think I bought some equipment with it.

Q: Equipment for what?

A: Was it—see, he knows more about this. I don't even know what to tell you about this.

\* \* \*

Q: Okay. So you really didn't have any—at least prior to forming L. Rowland Enterprises, LLC, you didn't have any prior business experience?

A: No, not unless you call it a cook. I used to cook. So that's about it.

\* \* \*

Q: Mr. Rowland testified at his 341 meeting that he had transferred some interest in Our Hero to L. Rowland Enterprises and specifically mentioned the Derr Road address.

A: Uh-huh.

Q: Do you know what he's talking about? Can you elaborate on that any more from what you already told me?

A: No, I can't. I have no clue. I don't know what you're talking about.

Q: Okay. Are you familiar with an entity known as Our Hero Sandwiches, LLC?

A: No.

\* \* \*

Q: Okay. And up to the formation of L. Rowland Enterprises on July 21st, 2008, the income derived from those—those two shops went into Our Hero Subs Limited accounts?

A: Yeah, I guess. At the time, yeah.

Q: Okay. And did you have any involvement in those businesses prior to that point?

A: Not really.

(Lorena Rowland Dep., Jan. 14, 2010, at 14, 18, 21, 25, Adv. Doc. 47).

The testimony of Debtor and his wife, Lorena, is sometimes inconsistent, contradictory, and obscure. They do not seem to fully understand the legal operation of deeds, security interests, asset purchase agreements, or incorporation documents. Based upon a comprehensive review of the transcripts, however, Debtor and his wife apparently take the position that the two stores located at Derr Road and Selma Road became the property of Lorena Rowland sometime during 2008 because Lorena was running the stores and because Debtor ceased "managing the cash flow" of the two stores. According to Debtor's view, this transfer was ultimately consummated or finalized when Lorena officially formed Rowland Enterprises about two weeks before the bankruptcy filing, and funds from the two stores were deposited into newly opened bank accounts in the name of Rowland Enterprises. Strictly speaking, the only real transfer in this scenario would appear to be the funds transferred from OHS to Rowland Enterprises.

However, it is not the transfer itself or the value of what was transferred that is at issue here, but Debtor's fraudulent intent, an intent to prevent his creditors and the Trustee from discovering transferred assets by means of a false oath. *See Keeney*, 227 F.3d at 685 ("Proof of harm is not a required element of a cause of action under Section 727"); *Hamo*, 233 B.R. at 725 (a debtor's assertion that omitted information concerns a worthless business asset is a specious defense). Debtor attempted to divert his only significant assets to his wife and disguised the transfer with the formation of a new legal entity and new bank accounts at two different banks. In effect, he tried to subtract the value from OHS, sequester that value in

his wife's LLC, and leave his creditors with the valueless residue. He intentionally failed to disclose the transfer in his schedules or to the Trustee, and swore in his schedules and during his testimony that OHS had no value.

Nowhere does Debtor claim that he forgot about this information or offer any other explanation or defense. The significance of the asset in question, the timing of the transfers, the complete lack of disclosure in the statement of financial affairs, the misleading valuation of OHS, and the clear pattern of obfuscation and reluctant disclosure during the § 341 Meeting lead this court to the inescapable conclusion that Debtor intentionally made a false oath by means of his schedules and statement of financial affairs as well as during his testimony. He did so with fraudulent intent and his discharge will be accordingly denied.

### 11 U.S.C. § 727(a)(2)—Fraudulent Transfer or Concealment of Property

■ Having determined that Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(4), it is unnecessary to decide if the same result pertains under 11 U.S.C. § 727(a)(2). However, it may be instructive for the parties if the court completes the analysis and it will require little further discussion because the evidence already considered at some length above likewise supports summary judgment under § 727(a)(2).

■ The text of 11 U.S.C. § 727(a)(2) reads as follows:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be

transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

11 U.S.C. § 727(a)(2). To prevail under this section, the Trustee must prove two elements: (1) a disposition of property, such as a transfer or concealment; and (2) a subjective intent by the Debtor to hinder, delay, or defraud a creditor through the act of disposing of the property. *Keeney*, 227 F.3d at 683.

Because much of this ground has already been covered in the previous section, it will not be repeated at length here. Debtor acknowledges the transfer of the two Our Hero stores and/or the revenues of the stores, so one of the two elements has seemingly been met. This is true despite the ambiguity of his admission. During his § 341 Meeting, he vaguely characterizes the transaction as a "transfer" of the stores to Rowland Enterprises. (H. Rowland § 341 Trans., at 12). Later, in responding to the motion for summary judgment, he adopts the characterization of the transaction recounted by Mrs. Rowland in her deposition, describing it only as the deposit of funds from the two stores into new accounts established by Rowland Enterprises. In his affidavit, he describes it more as a relinquishment of control: "I stopped managing the cash flow of two Our Hero stores.... My wife decided to continue operations at these stores some time after I had ceased business there.... I did not have any control of either of the businesses after I ceased operations." (H. Rowland Aff. at ¶ 12–14). At a minimum, it is clear that a transfer of value took place in that Debtor caused OHS to deposit business revenues from two of its stores into accounts belonging to his wife's company.

The other element, the subjective intent to hinder, delay, or defraud,[5] is more difficult to establish, especially on summary judgment. Much of the circumstantial basis for finding fraudulent intent has already been discussed. Debtor transferred the Our Hero stores or store revenues to an insider; the transferee company (Rowland Enterprises) was formed just before Debtor's bankruptcy filing; Debtor received no consideration for the transfer; he did not disclose the transfer in his statement of financial affairs or otherwise until confronted by creditor questioning; and he scheduled the value of his OHS business as $0.00. Furthermore, the OHS business was Debtor's most important asset which he rendered valueless by extracting the two stores that are still operational and presumably profitable. Debtor's prior pattern of conduct also indicates his propensity for transferring assets to his wife when creditors are clamoring for payment. *See Hamo,* 233 B.R. at 724.

However, unlike the situation under 11 U.S.C. § 727(a)(4) where Debtor's intentional and fraudulent false oaths were not countered by any explanation or defense, Debtor has in this instance at least partially denied deleterious intentions with respect to his creditors. In his affidavit, Debtor categorically denies any intention to hinder or delay his creditors, although he curiously omits from his denial the intent to defraud. The court cannot imagine a debtor's intent to defraud creditors that would not also include the intent to hinder and delay them. Certainly, Debtor has not explained how this might be possible. Consequently, Debtor's self-serving and otherwise unsupported statement has no

more probative effect than did his complete failure to provide an explanation for his false oaths. In both instances, the failure to respond with specific facts showing a genuine issue for trial warrants granting summary judgment against the nonresponding party pursuant to Fed. R.Civ.P. 56(e)(2).

The court is mindful of its duty to construe the facts in Debtor's favor and, to the extent Debtor has presented an alternative view of the facts that might vitiate the requisite intent, the court would be compelled to deny summary judgment. But, Debtor presents no coherent alternative view or theory. At most, Debtor provides two short sentences in his affidavit from which the court will attempt to extrapolate an alternative theory, a theory which Debtor may never have embraced. Those two sentences, quoted here once again, simply state that "I stopped managing the cash flow of two Our Hero stores.... My wife decided to continue operations at these stores some time after I had ceased business there." (H. Rowland Aff. at ¶ 12–13). These statements emphasize his passive relinquishment of business activities at the stores as contrasted with his wife's proactive assumption of control in his absence. They imply a scenario in which the stores were gradually acquired by Mrs. Rowland as if by osmosis without any overt action or intentional transfer by Debtor, fraudulent or otherwise.

Even when considered in a vacuum, the notion that a business owner could transfer his business enterprise (or bank funds under his control) passively and unconsciously, with no particular intent or any cognizance of its effect on creditors is not tenable. When viewed in the context of

---

5. Although the phrase "hinder, delay, or defraud" is in the disjunctive, the majority of courts construe the language conjunctively such that proof of an intent to hinder or delay

is insufficient without proof of intent to defraud. *See* 6 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* § 727.02[3][a] (16th ed. 2010).

the overwhelmingly persuasive circumstantial evidence already discussed, this supposed alternative theory simply wilts away. Mrs. Rowland's deposition testimony alone is sufficient to dispel any notion that she had been previously operating the stores and managing their cash flow.

Even when the court gives Debtor the most liberal benefit of the doubt, he cannot prevail. Debtor has ultimately countered this strong circumstantial evidence of fraudulent intent with nothing of substance. As a consequence, his discharge must also be denied under § 727(a)(2).

### CONCLUSION

For the reasons stated above, the court **GRANTS** the Motion for Summary Judgment filed by Plaintiff, James R. Warren, Trustee and denies the discharge of Debtor Harold M. Rowland pursuant to 11 U.S.C. §§ 727(a)(2) and 727(a)(4).

**SO ORDERED.**