**NOT RECOMMENDED FOR PUBLICATION**
File Name: 16a0197n.06

Nos. 15-5831/5832

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

In re: KEVIN BRIAN GANDY,

    Debtor

_____

|  |  |  |
|---|---|---|
| KEVIN BRIAN GANDY, | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE EASTERN |
| Appellant/Cross-Appellee, | ) | DISTRICT OF TENNESSEE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| ELLIOTT J. SCHUCHARDT, | ) | OPINION |
|  | ) |  |
| Appellee/Cross-Appellant. | ) |  |
|  | ) |  |

**FILED**
Apr 07, 2016
DEBORAH S. HUNT, Clerk

BEFORE: MERRITT, GIBBONS, and SUTTON, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Creditor Elliott Schuchardt filed an adversary proceeding for a determination that Chapter 7 debtor Kevin Gandy should be denied discharge based upon 11 U.S.C. §§ 727(a)(2), (3), and (4). The bankruptcy court denied Gandy's discharge after finding that Gandy knowingly and fraudulently made false statements under oath that materially related to his bankruptcy case in violation of 11 U.S.C. § 727(a)(4)(A), and Gandy appealed. The district court affirmed, and Gandy again appealed. We affirm.

**I.**

On February 3, 2011, Gandy filed a voluntary petition under Chapter 13 of the Bankruptcy Code. Along with his petition, Gandy filed his Schedule I—Current Income of Individual Debtor(s) ("Original Chapter 13 Schedule I"), which stated that he was single and had

two dependents: a 48 year-old "Live-In Wife/Girlfriend" and a disabled 27-year-old son. Gandy's Original Schedule I also stated that he was employed as the business and finance manager of West Side Honda in Knoxville, Tennessee, that his gross monthly income was $3,962, and that his "Combined Average Monthly Income" was $2,801. Gandy further noted that he is paid based on commission and that his income fluctuates. Gandy signed a declaration under penalty of perjury that he "read the foregoing summary and schedules, . . . and that they are true and correct to the best of [his] knowledge, information, and belief." On June 21, 2011, Gandy filed an Amended Chapter 13 Schedule I, which revised his marital status to "Married" and stated that his spouse was unemployed.

In his Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Original Chapter 13 Means Test"), which was also filed on February 3, 2011, Gandy again represented that he was unmarried. He further represented that his monthly income totaled $4,333, which made his annualized income $51,996, which is less than the applicable median family income in Tennessee of $52,368.[1] As with his Schedule I, Gandy signed a declaration under penalty of perjury.

Gandy also filed an Original Statement of Financial Affairs, in which he represented that he had not closed, sold, or otherwise transferred any financial accounts or instruments in the preceding year. As with his other filings, Gandy declared under penalty of perjury that his answers were true and correct. When Gandy filed an Amended Statement of Financial Affairs on June 21, 2011, he did not change his answer regarding whether he had closed any financial accounts in the preceding year, but in fact he had closed a bank account with Branch Banking

---

[1] Because Gandy represented that his annualized income was less than that of the applicable median family income in Tennessee, he did not have to complete the remainder of the Means Test, including information regarding deductions from income, disposable income, and additional expenses.

2

& Trust ("BB&T") on September 28, 2010, just four months before he initiated his Chapter 13 bankruptcy proceedings.

After a trial in August 2011, the bankruptcy court confirmed Gandy's Chapter 13 Plan, which required him to make semi-monthly payments of $141 for sixty months. The bankruptcy court overruled the objections of Schuchardt, who had challenged the accuracy of Gandy's schedules. As a condition of confirmation, the bankruptcy court required Gandy to file a declaration under penalty of perjury setting forth all income earned for each subsequent 90-day period and to pay any excess disposable income to the Chapter 13 Trustee. On February 5, 2013, the Chapter 13 Trustee filed a motion to dismiss Gandy's Chapter 13 case because Gandy had failed to pay $6,110 in excess disposable income. Before the bankruptcy court ruled on the Chapter 13 Trustee's motion to dismiss, however, Gandy converted his case to Chapter 7, pursuant to 11 U.S.C. § 1307.

Upon conversion to Chapter 7, Gandy filed under penalty of perjury a Chapter 7 Statement of Current Monthly Income and Means-Test Calculation ("Original Chapter 7 Means Test"), which again classified him as unmarried and listed a total current monthly income of $4,333 and an annualized income of $51,996. Because Gandy's reported annualized income was less than the applicable median family income of $52,368, a presumption of abuse did not arise under 11 U.S.C. § 707(b)(2).[2]

Shortly thereafter, Schuchardt filed a motion to dismiss Gandy's Chapter 7 case, arguing that Gandy's Original Chapter 7 Means Test was false and constituted abuse under 11 U.S.C. § 707(b). The bankruptcy court denied Schuchardt's motion to dismiss because Gandy's income

---

[2] If a debtor's annualized income exceeds the applicable median family income, then a presumption of abuse of bankruptcy law's protections arises under § 707(b), which requires the debtor to provide additional information to the court to ensure that the debtor is eligible for the total relief promised a Chapter 7 debtor. *See Schultz v. United States*, 529 F.3d 343, 347–48 (6th Cir. 2008).

as stated in his Means Test was low enough that only the court and the United States Trustee had standing to seek dismissal of Gandy's case under § 707(b)(6).

In response, Schuchardt filed the instant adversary proceeding, claiming that Gandy should be denied discharge for knowingly and fraudulently filing false documents in violation of 11 U.S.C. §§ 727(a)(4)(A), (a)(2), and (a)(3). Before Gandy responded to the Complaint, he filed a notice to withdraw his Original Chapter 7 Means Test, which he asserted had been filed "in error." On that same date, Gandy filed an Amended Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Amended Chapter 13 Means Test"), in which he certified that he was unmarried and which updated his monthly income to $4,689, with an annualized income of $56,268—more than the applicable median family income of $52,368. Likewise, Gandy filed an Amended Chapter 7 Statement of Current Monthly Income and Means-Test Calculation ("Amended Chapter 7 Means Test"), in which he certified that he was unmarried and which updated his monthly income to $4,689, with an annualized income of $56,268.

The bankruptcy court found that Gandy had made material false oaths with fraudulent intent in his Original/Amended Chapter 13 Means Test, his Original/Amended Chapter 7 Means Test, his Original/Amended Chapter 13 Schedule I, and his Original/Amended Statement of Financial Affairs, which warranted denial of discharge under 11 U.S.C. § 727(a)(4)(A). However, the bankruptcy court declined to find that Gandy had violated 11 U.S.C. §§ 727(a)(2) or (a)(3). The district court affirmed the ruling of the bankruptcy court.

## II.

"On appeal following the district court's review of the bankruptcy court's decisions, we review the bankruptcy court's orders directly rather than the intermediate decision of the district

court." *Grant, Konvalinka & Harrison, PC v. Banks (In re McKenzie)*, 716 F.3d 404, 411 (6th Cir. 2013) (citation omitted). We therefore review the bankruptcy court's legal conclusions *de novo* and its findings of fact for clear error. *Id.* A factual finding is clearly erroneous only if, based on the whole record, we are left with a definite and firm conviction that a mistake has been made. *See, e.g.*, *United States v. McGee*, 494 F.3d 551, 554 (6th Cir. 2007). Although "[t]he Bankruptcy Code should be construed liberally in favor of the debtor," discharge is a privilege and not a right, as a debtor who has engaged in certain types of misconduct is not entitled to a discharge. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000); *see* 11 U.S.C. § 727.

The bankruptcy court denied discharge on the sole ground that Gandy made false oaths. Schuchardt contends that the bankruptcy court erred in not additionally finding that Gandy violated §§ 727(a)(2) and 727(a)(3). However, "[i]f any one of these grounds justifies the denial of discharge, we need not decide the propriety of the others." *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 177 (5th Cir. 1992). Because we affirm the bankruptcy court's denial of discharge pursuant to § 727(a)(4), we do not address the merits of Schuchardt's §§ 727(a)(2) and 727(a)(3) claims.

11 U.S.C. § 727(a)(4)(A) provides as follows: "The court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account." In order to merit denial of Gandy's discharge, Schuchardt must prove five elements by a preponderance of the evidence: "1) [Gandy] made a statement under oath; 2) the statement was false; 3) [Gandy] knew the statement was false; 4) [Gandy] made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case." *In re Keeney*, 227 F.3d at 685 (citing *In re Beaubouef*, 966 F.2d at 178). "Whether a debtor has

made a false oath under section 727(a)(4)(A) is a question of fact," which we review for clear error. *Eifler v. Wilson & Muir Bank & Trust Co.*, 588 F. App'x 473, 477 (6th Cir. 2014) (quoting *In re Keeney*, 227 F.3d at 685). False statements in the debtor's schedules are sufficient to justify the denial of discharge. *In re Beaubouef*, 966 F.2d at 178.

We previously considered fraudulent intent and materiality under 11 U.S.C. § 727(a)(4)(A) as follows:

> [I]ntent to defraud "involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998). A reckless disregard as to whether a representation is true will also satisfy the intent requirement. *See id.* "[C]ourts may deduce fraudulent intent from all the facts and circumstances of a case." *Williamson* [*v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 252 (4th Cir. 1987)] (citation omitted). However, a debtor is entitled to discharge if false information is the result of mistake or inadvertence. *See* [*Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294 (10th Cir. 1997)]. The subject of a false oath is material if it "'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *Beaubouef*, 966 F.2d at 178 (citation omitted).

*In re Keeney*, 227 F.3d at 685–86. Further, materiality does not turn solely on an asset's value, but also depends on "whether the omission was detrimental to creditors." *Pratt v. Pratt (In re Pratt)*, 411 F.3d 561, 566 (5th Cir. 2005) (quoting *In re Beaubouef*, 966 F.2d at 178). "It makes no difference that he does not intend to injure his creditors when he makes a false statement." *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984).

The bankruptcy court found that Gandy made material false oaths in his Original/Amended Chapter 13 Means Test, his Original/Amended Chapter 7 Means Test, his Original/Amended Chapter 13 Schedule I, and his Original/Amended Statement of Financial Affairs. The bankruptcy court reasoned that "based upon the Defendant's own pay advices, the

$4,333.00 reflected in the Chapter 13 Means Test and again in the Chapter 7 Means Test is not an accurate figure, and the Defendant's testimony that the three day delay in filing his bankruptcy schedules caused a mathematical error is not plausible and is clearly incorrect." *In re Gandy*, No. 11-30369, Adversary No. 13-3061, 2014 WL 1374050, at *6 (Bankr. E.D. Tenn. Apr. 8, 2014). Gandy's "testimony at trial that he had not remembered when the [BB&T] account had been closed did not satisfy the court that the failure to list the account was a mere oversight." *Id.* at *7. Further, Schuchardt's "objections and motions put [Gandy] on notice that he should recheck his numbers, which were sworn to under penalty of perjury." *Id.* at *8.

On appeal, Gandy argues that the false oaths were mere mistakes and that he lacked the intent required by the statute. He further asserts that the false oaths were not material, as required by *In re Keeney*. According to Gandy, because the false statements in the Chapter 13 and Chapter 7 Means Test would not affect his eligibility to file a Chapter 7 petition, he should not be denied discharge. As for his failure to disclose the BB&T account, Gandy claims that he "stated several times at trial that the omission was caused by sheer inadvertence." First Br. at 22.

As early as February 22, 2011, the same month in which Gandy filed his original Chapter 13 petition, Schuchardt's objections to the accuracy of Gandy's filings should have put Gandy on notice that his stated income was false. Although the bankruptcy court ultimately confirmed Gandy's Chapter 13 plan, and overruled Schuchardt's objections, the court ordered Gandy to file his payroll stubs with the court and to pay additional earned income to the Chapter 13 Trustee— which further should have put Gandy on notice regarding the accuracy of his filings. Gandy again filed under penalty of perjury the incorrect income amount when he converted his case to Chapter 13 more than two years later. Gandy did not finally correct the mistakes in his Original Chapter 13 Means Test until July 31, 2013, and in his Original Chapter 7 Means Test until

September 11, 2013. Gandy's reliance on inaccurate schedules for more than two years, despite repeated objections from Schuchardt, certainly gave the bankruptcy court reason to find that Gandy had acted with the requisite fraudulent intent. *See Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987) ("Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.").

Despite signing declarations under the penalty of perjury, Gandy relied upon false income numbers for years, and he continued to rely upon these numbers as Schuchardt repeatedly challenged their veracity. *See* Fed. R. Bankr. P. 1008. He has never explained why some of his documents and his testimony at trial indicate that he is married, while others list him as unmarried, nor has he explained how he could spend $147 per month on educational expenses for a minor child when his only stated dependents are a wife/girlfriend and twenty-seven year old son. Contrary to the "fundamental purpose of § 727(a)(4)(A) . . . to insure that the trustee and creditors have accurate information without having to do costly investigations," Gandy presented confusing and dishonest information to the bankruptcy court on multiple occasions. *See United States Trustee v. Zhang (In re Zhang)*, 463 B.R. 66, 86 (Bankr. S.D. Ohio 2012) (quoting *Jahn v. Flemings (In re Flemings)*, 433 B.R. 230, 237 (Bankr. E.D. Tenn. 2010)). When considered together, the numerous and repeated false oaths in the Original/Amended Chapter 13 Means Test, his Original/Amended Chapter 7 Means Test, his Original/Amended Chapter 13 Schedule I, and his Original/Amended Statement of Financial Affairs, prove a clear example of "a pattern of reckless and cavalier disregard for the truth." *Stevenson v. Taylor (In re Taylor)*, 461 B.R. 420, 423 (E.D. Mich. 2011) (citation omitted).

Gandy's argument that none of the false oaths in his Original/Amended Chapter 13 Means Test, his Original/Amended Chapter 7 Means Test, his Original/Amended Chapter 13

Schedule I, and his Original/Amended Statement of Financial Affairs, are material, is unavailing. The test for determining whether a false oath is material is not so narrow as Gandy suggests when he contends that materiality requires that a false oath "would have changed [something] with respect to the case or produced an asset or other benefit to the estate." *See* First Br. at 26. Rather, a false oath is material if it "bears a relationship to the bankrupt's business transactions." *In re Beaubouef*, 966 F.2d at 178 (citation omitted). "In determining whether or not an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors." *Id.* (citation omitted).

In this case, the false oaths regarding Gandy's income were detrimental to creditors. Gandy's misstated income potentially affected the rights of Schuchardt and other creditors to file a motion to dismiss, as well as whether a presumption of abuse arose in the case and whether Gandy was required to complete additional paperwork. Although the instant case related to Gandy's Chapter 7 bankruptcy, his inaccurate income in his Original Chapter 13 Means Test directly related to the confirmation of his Chapter 13 plan and how much he owed to the Chapter 13 Trustee each month and was in place for more than a year before he converted to Chapter 7. Gandy's false oaths regarding his monthly income are plainly material. So too is the false oath in the Original/Amended Statement of Financial Affairs, in which Gandy failed to disclose the closure of the BB&T account. The bankruptcy court found that Gandy's testimony at trial that his failure to disclose this account was a mere oversight was not convincing, and Gandy presented no compelling argument for why this court should overturn this factual finding by the bankruptcy court.

For the reasons stated previously, we affirm.